3 So.2d 14

### SHORES v. ELMORE COUNTY BOARD OF EDUCATION.

#### 5 Div. 344.

Supreme Court of Alabama.

June 13, 1941.

Rehearing Denied June 30, 1941.

John O. Harris and Holley, Milner & Holley, all of Wetumpka, for appellant.

U. G. Jones and C. Truman Reneau, both of Wetumpka, for appellee.

BOULDIN, Justice.

During the scholastic years 1938-'39, and 1939-40, ending June 30, 1940, the transportation of school children to and from the consolidated schools in Elmore County was by the owners of their own school busses, at prescribed rates, under verbal contracts.

The County Superintendent of Education in that county is elected by the qualified voters of the county. On June 4, 1940, R. E. Trammell was nominated in a primary election, for election as County Superintendent of Education at the coming November Election, to succeed J. Roy Gantt. On June 28, on the recommendation of the outgoing Superintendent, the County Board of Education passed a resolution for the re-employment of thirty-five men named therein to transport the school children under written contract of prescribed form, using their own school busses, and at prescribed rates. These contracts were to run for three years, beginning with the school year 1940–41. Accordingly, on August 30, 1940, the County Board entered into such a contract with appellant to operate a school bus over the same route as theretofore. On January 31, 1941, after the newly elected Superintendent of Education took office, the County Board of Education passed a resolution, reciting:

"Whereas, the cost of pupil transportation in the county is increasing year by year, and

"Whereas, there is a definite trend in the state toward county ownership of busses, and

"Whereas, the Board is of the opinion that county ownership and operation of busses will result in safer, more efficient, and more economical school bus transportation,

"Therefore be it resolved, that the Board take over ownership of busses for pupil transportation in the following manner."

The manner prescribed was to replace the private busses by installing new busses purchased by the Board of Education from year to year. The older models of private busses were to be replaced first. Under this resolution, the appellant's tenure would end with the school year 1940–41.

This suit is to test the validity of the three-year contract entered into with appellant, otherwise stated, the power of the County Board of Education to pass the resolution of January 31, 1941, having the effect to rescind and terminate appellant's contract at the end of the school year 1940–41.

We address ourselves to the question of public policy involved in making the three-year contract with appellant. This question calls for some consideration of the powers and functions of the County Board of Education and the relation of the County Superintendent of Education thereto.

The School Laws, now appearing in Tit. 52, Code of 1940, must be looked to in passing upon the issue before us.

The "general administration and supervision of the public schools * * * of each county * * * shall be vested in the county board of education." § 62.

This Board consists of five members, elected for interlocking terms of six years. It is a deliberative body, acting in session, keeping records of its orders and proceedings. §§ 63, 65, 67.

The members receive 'per diem and expenses while attending meetings, limited to twelve days in any one year.

The County Superintendent of Education is the Executive Officer of the County Board of Education, and also Secretary of the Board. §§ 69, 102.

His qualifications as to scholarship and teaching experience are prescribed by law. § 103. He is a salaried officer devoting his entire time to the public school interests. § 111.

"The county board of education shall determine with and on the advice of the county superintendent of education, the educational policy of the county." § 73.

"The county board of education shall exercise through its executive officer, the county superintendent of education, and his professional assistants, control and supervision of the public school system of the county. The board shall consult and advise through its executive officer, and his professional assistants, with school trustees, principals, teachers, and interested citizens, and shall seek in every way to promote the interest of the schools under its jurisdiction." § 74.

"The county board of education shall consolidate schools wherever in its judgment it is practicable, and arrange, if necessary, for the transportation of pupils to and from such consolidated schools, subject to the provisions of this title." § 76.

"*Plans for consolidated schools.*—The county superintendent of education, subject to the provisions of this title, shall work out plans for the consolidation of schools, and for the grounds, buildings, and equipment of such consolidated schools, and submit the same for approval and adoption by the county board of education." § 119.

"The county superintendent of education, subject to the provisions of this title, shall recommend for approval and adoption by the county board of education, educational policies to promote the educational interests of the county and rules and regulations for the conduct of the schools." § 114.

All principals, teachers, and other regular employees of the Board are to be appointed by the Board on the written recommendations of the Superintendent. §§ 86, 123.

These references suffice to illustrate the intimate official relations between the Board and the Superintendent.

It is apparent from § 76, supra, that the transportation of school children is directly related to the consolidation schools. Transportation is indeed a part of the operation of such schools, a daily undertaking, an ever present responsibility.

The general terms in which the duty and authority to install and maintain a transportation system is conferred by § 76, serves to emphasize the responsibility of the Board in arranging for the prompt delivery of the children to and from school, and the very vital matter of conserving their health and safety.

That the advice and guidance of the County Superintendent of Education in devising plans and policies in this regard is contemplated by the law seems obvious.

In the location of consolidated schools, and the transportation of pupils as part of such system, the Board of Education is acting in a quasi legislative capacity.

It is not to be questioned that under the general power to contract, § 99, the Board may adopt the policy of contracting with individuals to transport school children in their own vehicles under proper and adequate regulations. State v. Tuscaloosa County et al., 233 Ala. 611, 613, 172 So. 892.

Nor is it to be questioned that the Board, on the advice of the County Superintendent, may adopt the policy of transporting school children in its own vehicles, with appropriate safeguards. Scott et al. v. Mattingly et al., 236 Ala. 254, 182 So. 24; Salter v. Board of Education of Jefferson County et al., 229 Ala. 631, 159 So. 78.

The real question is, Can the Board, with or without the advice of an outgoing superintendent, enter into a contract with private parties, running through the term of the incoming superintendent, thus strip-

ping itself of power to adopt a change of policy on the advice of its executive officer. Responsibility of transporting children is on the authorities charged with such duty at the time. The authority and the responsibility cannot be divorced. In much the administration of each executive officer is a new administration. The Board has the duty to hear the advice of the executive officer charged with the duty to give advice. The responsibility of both in the transportation of school children is to the children being transported from day to day.

We lay down no hard and fast rule touching the duration of any and all contracts into which County Boards of Education may enter in the accomplishment of the objectives committed to them. As of course, the Board is a continuous body. It elects a president and vice-president each year. § 67.

Cases in other jurisdictions, not shown to have a setup like ours, can render little assistance.

Our own case of Willett & Willett v. Calhoun County, 217 Ala. 687, 117 So. 311, furnishes a close analogy.

We there held that the county governing body could not contract with an attorney to represent and advise the county authorities for a term beyond the terms of the members of the Board of Revenue.

This, upon the ground that such contract was against public policy in depriving the succeeding Board of the right to select its own legal adviser, one standing in confidential and personal relations to the Board.

The County Superintendent of Education is the Executive Officer, and law made advisor of County Board of Education during his incumbency. His position in that regard .is not less important nor intimate than that of an attorney. By the proceedings in June, 1940, if valid, the Board deprived itself of the advice of such incumbent in formulating its policy on a question involving economic results, as well as vitally concerning the health and safety of the school children.

The case of Daves et al. v. Rain, 235 Ala. 82, 178 So. 63, dealt with the sole question whether under a contract with the Board of Education for the transportation of school children the carrier was an employee or an independent .contractor.

No question of the validity of a five-year contract was presented, nor considered.

We observe, however, the contract there involved, as disclosed by report of the case in the Court of Appeals, 28 Ala.App. 54, 178 So. 59, 61, contained a clause "(d)" retaining the right to rescind in case the Board itself concluded to engage in the transportation of children, etc.

In other words, that contract was to terminate when the Board adopted a different policy in the transportation of school children.

We further observe that the contract of August, 1940, was entered into after a member of the County Board had been given an opinion by the Attorney General, holding such contract would not be binding upon the successors in office of the present board, and the present superintendent. Quar. Report Attorney General, Vo. XX, p. 88.

We conclude the resolution of June 28, 1940, and the contract made in pursuance thereof, insofar as they undertook to bind the Board of Education for three years, covering the incumbency of the incoming superintendent, were not within the intendment of our system of school laws, but violative of the public policy evinced by such laws; and the resolution of January, 1941, adopting a new policy in the transportation of school children was within the power and discretion of the Board.

We need not consider other questions raised.

The judgment of the court below is affirmed.

GARDNER, C. J., and FOSTER and LIVINGSTON, JJ., concur.