Lees, Appellant, *v.* Sampson Land Company.

Argued October 8, 1952. Before DREW, C. J., STERN, STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Milton W. Lamproplos,* with him *Smith, Buchanan, Ingersoll, Rodewald & Eckert,* for plaintiffs, appellants.

*Mahlon E. Lewis,* with him *Loyal H. Gregg,* for defendants, appellees.

*Clem M. Strobel,* Solicitor, for Penn Township, appellee.

OPINION BY MR. JUSTICE MUSMANNO, December 6, 1952:

The plaintiffs in this case, 24 in number, are homeowners in Penn Township, Allegheny County, with properties adjoining or close to a 150-acre tract owned by the defendants Sampson Land Company, Sampson Development Company and Sampson Bros., Inc., engaged in constructing thereon 309 single family dwellings.

On August 27, 1951, the defendants offered (to the commissioners of Penn Township) to build a sewage treatment and disposal plant on their property at their own expense and, upon completion, turn it over to the township free of charge. The township authorities accepted the offer and agreed, after construction of the plant, to operate and maintain it as part of the public sewer system of Penn Township.

On January 28, 1952, the plaintiffs filed a bill in equity praying that the defendants be enjoined from erecting the contemplated plant, averring it to be a nuisance per se and that in addition it would violate an ordinance of Penn Township prohibiting such an operation within the area zoned Residential R-1, which included the tract of land in question.

On answer and replication filed, the Court proceeded to a hearing and in due time entered a decree nisi, dismissing the bill. Exceptions were filed by the plaintiffs, the matter came on for argument before a court en banc, and upon the entering of a final decree dismissing the exceptions, an appeal was taken to this Court.

After conference with counsel for all parties, the Chancellor in the court below brought on the record as an added defendant the Township of Penn itself, and we approve of that procedure.

The plaintiff-appellants complain that the proposed sewage plant is not only a nuisance per se, but that being a private, as opposed to a public, operation, the township may not operate it since the township is bound to observe its own zoning restrictions.

A review of the record confirms the Chancellor's findings that the type of sewage disposal plant which the defendants propose to construct and to deed over to Penn Township is not a nuisance per se; it is not unsightly nor will it emit offensive odors or noxious and nauseous gases. The evidence further confirms the finding that similar plants are in operation in other residential municipalities in Allegheny County with no untoward effects on health or real estate values. It so happens that there are three other similar sewage and disposal plants in the same Penn Township.

The viewpoint of the plaintiffs is not unnatural. It is the one of all established residents who invariably view with suspicion any large scale activity of new neighbors, feeling certain that that activity, whatever its nature, cannot possibly enhance the value, the beauty or utility of their own properties. But it is also a usual development in situations of this kind that what was at first viewed with alarm is later accepted with resignation, then approved begrudgingly and eventually pointed to with pride. The development contemplated undoubtedly falls into that class of suburban phenomena.

The taxpayers of Penn Township could only hail with gratification this opportunity for the Township to obtain free of charge and without commitments this very necessary, if not overly romantic, sewage plant. What saves money to the taxpayers has its own aroma of satisfaction. Nor is there anything in the law to prohibit this transaction. Section 49 of the First Class Township Law (Act of June 24, 1931, P. L. 1206, Art.

XXIV, as amended April 2, 1947, P. L. 47; May 27, 1949, P. L. 1955; June 28, 1951, P. L. 596) provides that townships may establish and construct sewers at locations which seem advisable to the Commissioners and permits them to acquire sewage systems by purchase or by eminent domain proceedings. What therefore may be obtained by purchase or condemnation proceedings, *a fortiori* can be acquired as a gift.

The appellants contend that when the township acts in its proprietary capacity it is subject to the provisions of its own zoning regulations, but the zoning ordinance here—Article III, Section 301 (4)—provides that in an R-1 Residence District, "A building may be erected, altered or used and a lot or premises may be used for any of the following purposes . . . (4) Farm; Greenhouse; *municipal* or recreational *use*; railway passenger station." (Emphasis supplied.)

"Municipal use" is thus specifically permitted. But as to this the plaintiffs maintain that "municipal use" must be interpreted to mean those uses compatible and consistent with the character of a R-1 Residential District, which is a single-family dwelling area. Therefore, it is argued that if a sewage plant is a municipal use within the meaning of 301 (4), it would necessarily follow that the Township could introduce into such area whatever kind of structure it wished, and that "even garbage disposal plants, garbage dumps, municipal garages for the storage, service and repair of township road and automotive equipment, public housing projects, or public parking garages or lots qualify for admission to an R-1 Residence District, the most restricted class in the township."

One of the greatest fallacies in the proposed art, science or game of argumentation is the one which proclaims that if item "A" of the alphabet is allowed, items "X", "Y", and "Z" cannot be enjoined. There

is no category in life so absolute that the items comprising that category are not subject to comparison and individual evaluation. The regulations of a municipal park which would permit its use by dogs would not authorize the introduction of tigers on the ground that both dogs and tigers are quadrupeds.

Because the municipality may operate a sewage plant of the character here described does not say it may operate a soap factory, a glue mill or a tannery in the area involved. If a municipality conducts any enterprise to the detriment of the health, safety or general welfare of the public, it may be enjoined from continuing that use. *City of Cincinnati v. Wegehoft,* 119 Ohio St. 136, 162 N. E. 389.

However, even if the zoning ordinance did not specifically permit a use of the land in question for municipal purposes, the township could still operate the proposed plant for the people's welfare. In *Sheets v. Armstrong,* 307 Pa. 385, 161 A. 359, an attempt was made to enjoin the Allegheny County commissioners from purchasing a tract of land within the limits of the City of Pittsburgh for the purpose of erecting thereon an auditorium, since, it was argued, the City zoning ordinances did not permit such a use. In authorizing the acquisition of the land, the City had by ordinance consented to the erection of the auditorium in question. This Court held that "the effect of this enactment was to abrogate the zoning ordinance so far as this property is concerned."

In the case of *Kress Box Co. v. Pittsburgh,* 333 Pa. 121, 4 A. 2d 528, this decision was confirmed: "The other questions raised have been passed upon in support of the decree of the court below in Sheets et al. v. Armstrong et al., 307 Pa. 385, and other decisions."

If a municipality therefore can exempt itself from the provisions of a zoning ordinance which has already

been enacted, it can all the more exempt itself from the outset by appropriate provision in the zoning ordinance itself.

It is to be noted also that Article XIII, Sec. 1300 of the Penn Township Zoning Ordinance provides: ". . . nor shall this Ordinance apply to any building of the Township or extension thereof, or to the use of any premises by the Township, if the Board of Township Commissioners shall, after a public hearing decide that such building or extension thereof, or such use of any premises, is reasonably necessary for the convenience or welfare of the public provided that any municipal recreational building or use may be established by the Board of Township Commissioners at any location in the Township without holding such public hearing."

The plaintiffs counter that this section is not applicable to the instant case because the proposed sewage disposal plant is a private use or purpose designed and intended to serve merely the inhabitants of the 309 homes to be built by the corporate defendants. But if the furnishing of a sewage disposal system for 309 families would not be regarded as a municipal function in itself, with which conclusion we cannot agree, there is the further fact that the Commissioners of Penn Township accepted the proposal of the corporate defendants with the specific condition that upon completion of the plant, it would be operated and maintained by the Township as part of its public sewer system, *and upon further condition that additional land for further expansion of the plant would be conveyed.* the lower court, therefore, properly held: "The permit provisions contemplate enlargement of the plant if required. The watershed involved covers less than a square mile. The Commissioners have by their commitments made this part of the township's sewage sys-

tem. If any parties build in this drainage area later, they can compel the authorities to permit them to tap into the trunk lines, even if the plant capacity would have to be increased." It is also noteworthy, in this connection, that the permit by the State Water Sanitary Board for the plant in question was applied for by and issued to, not the corporate defendant developers, but the Township of Penn.

The plaintiffs advance the proposition that the use in question was not in conformity with Section 1300 for the further reason that it was not "reasonably necessary for the convenience or welfare of the public." Here again we find the vine of argumentation climbing around the pillar of facts but, like all vines, lending no support to the object it adorns. The record shows that the only other alternatives to the plan adopted were (1) the construction of 309 septic tanks which would present the problem of improper drainage of sewage where soil conditions were not favorable; or (2) locating the sewage disposal plant at a site $1\frac{1}{4}$ miles away. This would involve an expenditure which the financial condition and the borrowing power of Penn Township would not permit, nor could pro rata assessment be imposed on the properties intervening between the proposed site and the defendants' land. We cannot hold that the Commissioners' failure to adopt either of these two alternatives constituted an abuse of their discretion.

Of course, it is scarcely necessary to add that if the Township operates the plant in such a manner that it becomes a nuisance in fact, the courts of equity are open not only to the plaintiffs for such remedy as the conditions demand but they are available to anyone else who may suffer harm because of such a nuisance.

We are satisfied that the record reveals that the Chancellor's findings are supported by credible and

trustworthy evidence and that the Bill was properly dismissed.

Decree affirmed, costs to be paid by appellants.