78 So.2d 267

**WATER WORKS BOARD OF CITY OF BIRMINGHAM**

v.

**G. C. STEPHENS.**

**6 Div. 800.**

Supreme Court of Alabama.

Feb. 24, 1955.

Cabaniss & Johnston, K. E. Cooper and J. Asa Rountree, III, Birmingham, for appellant.

Smyer, Smyer, White & Reid, Birmingham, for appellee.

PER CURIAM.

This is a proceeding begun by a petition to the Board of Adjustment of the City of Birmingham in respect to its zoning ordinance: the petitioner being the Water Works Board of the City of Birmingham. It was agreed that petitioner is a "public service corporation and a municipal utility as contemplated by the General City Code

of Birmingham," and therefore an agency of the city. Jackson v. Hubbard, 256 Ala. 114, 53 So.2d 723. We presume, therefore, that it was set up under authority of section 394, Title 37, Code of 1940, and that the city has conveyed to it the water system which supplies the water needs of the city including the area here in question.

The water works board acquired three pieces of property, on which there are three dwelling houses, in north Birmingham at a cost of $25,500. The houses are to be removed and the board proposes to erect a water tank at a cost of $300,000, the tank to hold 6,300,000 gallons of water. The tank is set back twenty-five feet from the 18th Street front and twenty-two feet from 18th Avenue. The lot fronts one hundred and fifty-two feet on 18th Street and one hundred and forty feet on 13th Avenue north. The area is zoned "B" residence in the comprehensive zoning district ordinance of the city. Section 1602 of the general city code is a part of that ordinance. In it a "B" residence district may be used for the purposes specified for "A" residence districts (one family dwellings, etc.) and also multiple dwellings and other specified uses. It does not include such a water tank as now proposed, but includes an electric substation without rotary machinery, or gas regulating station. Sections 1609 to 1617 and 1626 of the city code provide for exceptions to area regulations. They are special exceptions dependent upon certain prescribed details.

Sections 1618 and 1619 of said code have reference to nonconforming uses, such as where on August 4, 1926 (when the ordinance was adopted), it was used in a manner not conforming to the uses prescribed by the ordinance. Sections 1620, 1621 and 1623 have reference to a change from one nonconforming use to another nonconforming use. Section 1626 contains provisions for other exceptions. There seems to be no area zoned expressly for the construction or use of a water tank.

Sections 1642, et seq. provide for the creation, power and duties of a board of adjustment, and follow substantially the requirements of section 781, Title 37, Code of 1940 (applicable generally), and section 717, Title 62, Code of 1940, applicable to Birmingham.

The city ordinance, supra, contains various detail provisions, among them is section 1643 with reference to the board—in the main not here material, but providing in (e) that the board shall modify the strict application of the provisions of this chapter (the zoning ordinance) in various enumerated situations, including No. 10, which permits an exception, though not so termed, "for the erection or use of a structure in any district by a public service corporation when such erection or use is reasonably necessary for the service of the public".

Section 717, Title 62, Code, applicable to Birmingham (like the general statute, section 781, Title 37, Code, prescribing the power of the board of adjustment), provides that it shall have the following powers: (1) "To hear and decide appeals (to it from the ruling of the administrative officers in the enforcement or application of the ordinance—section 1643, city code) where it is alleged there is error (etc., not here applicable)." (2) "To hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under said ordinance". (3) "To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinances shall be observed and substantial justice done". Section 719, Title 62, Code, (the same as section 783, Title 37, Code), provides for an appeal to the circuit court from the ruling of the board of adjustment, and on appeal the cause shall be tried de novo.

The Water Works Board of Birmingham made application to the board of adjustment for a modification of the zoning ordinance to permit the water works board to construct a water tank as described on the lot mentioned above.

On February 11, 1954, the board of adjustment, after notice and hearing upon

the intervention and objection by the property owners, made a finding and order. The finding included the following: "This board is of the opinion that a modification of the strict application of said zoning ordinance pertaining to said property will not tend to impair the health, safety, convenience or comfort of the public, including that portion of the public occupying the property immediately contiguous to said lot, and that the use of said lots as proposed is reasonably necessary for the service of the public". The order then proceeded to modify the strict application of the zoning ordinance so as to permit the Water Works Board of the City of Birmingham to erect on said property a water tank such as described. Thereupon an appeal to the circuit court was taken by one of the property owners. A hearing was had on that appeal and trial *de novo* came on in court, without a jury. Evidence was taken by both parties and on August 17, 1954, the trial judge made a finding and rendered judgment, from which we quote:

"The property in question is zoned B residence in the second 45 foot district. It is located approximately ¾ of a mile from the center of downtown Birmingham, and adjoins Oak Hill Cemetery. The area is fully developed and occupied by white citizens, mostly home owners. The land is elevated as compared with surrounding areas although the proposed site for the construction of the tank is one of the highest points. Before filing the application, the Water Works Board procured the assistance of an expert consulting agency, experienced in water works utility operation. The study and subsequent report indicated a need for additional facilities to maintain adequate water pressure for customers now being served and to provide in the future for anticipated increased demand.

"It was proposed to construct the tank in such manner as to afford adequate safety factors as to stresses and pressures. Other than a mental hazard, the erection of this tank should not present nor constitute a source of danger to the neighborhood or to the city as a whole. It should be noted here that the overall proposed plan for the system contemplated the construction of, at least, (4) other tanks some of which have been completed and others being now under construction. There would, of course, be additional pipe line extensions in the system. The idea was to build up water supply in storage tanks during the night time or period of minimum use and gravity feed this storage back into the system in the day time, or when most needed. The placement and building of this tank was not required solely because of service to the immediate vicinity but rather it was assumed that the entire general area would benefit.

"The testimony shows that there are other methods available such as installing additional pumps or water mains from Shades Mountain, the effect of which will accomplish the same purposes as intended by the erection of the storage tanks. This will cost considerable more money to install and to operate, and the proposed storage tank plan is without question the most economical operation.

"There are located within the general area other suitable and available sites for the location of the tank now under consideration, yet the proposed location, because of elevation, is probably the most desirable from the standpoint of the utility. The court has viewed the proposed site and the surrounding neighborhood. An inspection of a similar but smaller tank, recently completed at another location, was made. The proposed structure as planned will have a height of 98 feet and be 105 feet in diameter. It would be rather difficult to compare the size of this tank with some of the buildings or other structures in our city. But, certainly this structure will be of a substantial size.

"It is conceded that the question of possible decreased valuation to the Stephens property (or any of the

homes in the general neighborhood) was not an issue in this proceeding. There is no doubt in the court's opinion that the erection of this structure would substantially diminish the value of appellant's property and constitute an invasion of his property rights with no provision for compensation. It will have a similar effect, in varying degrees on many other homes in the vicinity.

"Our Supreme Court has upheld the rights of boards of adjustment 'to determine that in a particular situation the zoning ordinances should not be applied literally and, to that end the board should make proper adjustment to prevent unnecessary hardship, even to the extent of authorizing non-conforming uses.' Nelson v. Donaldson, 255 Ala. 76 [50 So.2d 244]. But here there is no question of hardship presented, since the site was acquired with full knowledge of its restricted use, only a short time before filing the application to modify.

"Variance from the terms of the zoning ordinance should be permitted only under peculiar and exceptional circumstances but the board is not a law making body. It has no power to amend the ordinance under which it functions. In permitting the building of this gigantic structure in a residential section, the board, in effect, rezoned the property in question. This it had no authority to do. When substantial changes, for whatever reasons, become advisable they must be made by the legislative body of the municipality.

"Accordingly, this court, sitting as a board of adjustment in a de novo trial upon the issues and evidence presented, denies the application of the Water Works Board of the City of Birmingham to construct the tank on the property in question. Costs herein are taxed against the appellee, the Board of Adjustment who excepts."

An appeal to this Court was taken by the water works board.

On this appeal we will take the facts as found by the presiding judge. This Court has held that the power of the board of adjustment is derived from statutory law which takes precedence over the municipal ordinances. Such statutory power, it is said, may not be circumscribed, altered or extended by the municipal governing body. Nelson v. Donaldson, 255 Ala. 76, 50 So.2d 244, 251. That case interpreted the statute, section 781, Title 37, Code, with respect to the clause which we have numbered (3), supra, as meaning the following:

"That § 781, Title 37, Code 1940, properly empowers the boards of adjustment to determine that in a particular situation the zoning ordinance should not be applied literally, and to that end the board should make proper adjustment to prevent unnecessary hardship, even to the extent of authorizing nonconforming uses. In order to prevent injustice, oppression, arbitrary application, and to promote 'the public interest', the board of adjustment has the power to find, under a certain set of facts, that the literal application of the ordinance would not be within the spirit of the ordinance. In other words, having in mind the public interest, and the interest of the people in a given use district, the legislature intended that so long as no oppression or unnecessarily great burden exists and, therefore, no great individual injustice done, the ordinance should be applied strictly; but, on the other hand, if the situation is such as to indicate oppression and unnecessary individual burden, then the spirit of the zoning ordinance would not be in accordance with the spirit of the law, that it should not be applied strictly and literally".

The cases of Fulford v. Board of Zoning Adjustment of City of Dothan, 256 Ala. 336, 54 So.2d 580, and Moore v. Pettus, 260 Ala. 616, 71 So.2d 814, do not involve the provisions of section 1643(e); (10),

supra, applicable to a public service corporation.

Section 1643(e), (10), of the general city code is a part of the ordinance itself and is a feature of the comprehensive zoning scheme. Section 1643(e), (2), was treated as operative but not to justify the relief sought in White v. Board of Adjustment of City of Birmingham, 245 Ala. 48, 50, 15 So.2d 585. It was said in that case that one of the principal purposes of the board of adjustment is to apply the discretion of experts to exceptional instances where permits are desired but do not strictly conform to the regulations provided in the ordinance.

■ We are not here dealing with the power of the board to authorize variances under the authority of clause No. 3 of section 717, supra, but an exception authorized by section 1643(e), (10), supra, provided for in clause No. 2 of that statute, to be available for the erection of certain structures upon which such board is required by the city ordinance to pass and to grant it if the board finds the structure is reasonably necessary for the service of the public. Yokley on Zoning Law and Practice, section 134, page 324.

■ The districts are zoned by the city with that power of the board engrafted on them. We think the board of adjustment has the power in its discretion under clause No. 2 of section 717, Title 62, Code, in connection with section 1643(e), (10), of the city code, to allow a modification of the strict application of the restrictions imposed by the zoning ordinance as an exception from the uses of this area as a "B" residence district so as to permit the erection of the water tank in question by the public service corporation when the board of adjustment finds that such structure and use are *reasonably necessary for the service of the public*. The board of adjustment, as such a body of experts, found that to be the situation and modified the strict application of the ordinance by allowing the exception sought. On appeal the same question was before the court.

We do not understand that the court disagreed with the board in finding that the erection and use of the water tank are reasonably necessary for the service of the public, but reached the conclusion that to grant the permit was in effect a rezoning of the property.

We think this would not be a rezoning but that the city zoned it so as to be subject to the power expressed in section 1643(e) of the city code, and we agree with the conclusion from the finding of facts that it is reasonably necessary for that service to the public. We wish to add that the water works board has no inherent selfish interest in the proposal when judged by the act authorizing it. It is apparently merely trying to perform a public duty and give needed service to the water customers of the city, with no net profit to be used for other purposes. It now uses the streets in the area for its water pipes, as shown by the maps. The effect of the instant proposal is to render better service and supply additional needs. The water works board had the whole situation surveyed by competent disinterested engineers. This proposal was their recommendation. An alternative was to construct another tunnel through Red Mountain, and to lay additional pipes through which to pump the water with sufficient pressure. Other suitable sites were not found to be free from the same objection as this but they were found by the court not to be as advantageous as the one selected. The parties agreed that depreciation in property values were immaterial, yet the trial court emphasized such depreciation drawn from his own observation.

The authorities hold that when a city is engaged in the water service business, it being proprietary in nature, it is bound by its own zoning regulations, but not so when it is engaged in a governmental function. Alabama Alcoholic Beverage Control Board v. City of Birmingham, 253 Ala. 402(9), 44 So.2d 593; Jefferson County v. City of Birmingham, 256 Ala. 436(4), 55 So.2d 196; 62 C.J.S., Municipal Corporations, §

226(16) page 484, notes 59 to 62; Taber v. City of Benton Harbor, 280 Mich. 522, 274 N.W. 324; Sunny Slope Water Co. v. City of Pasadena, 1 Cal.2d 87, 33 P.2d 672.

This Court has concurred in the theory that when a city is engaged in the business of supplying for compensation water service to the people, within its lawful power, it is engaged in a proprietary business. City of Birmingham v. Brock, 242 Ala. 382, 6 So.2d 499; City of Birmingham v. Lake, 243 Ala. 367, 10 So.2d 24.

■ The city water works board is a corporation organized by law to perform that undertaking as an agency of the city. Section 394, Title 37, Code; Jackson v. Hubbard, 256 Ala. 114, 53 So.2d 723. Therefore, the water works board is to be treated in the same light as the city itself in respect to the instant question. That is, that since the city would be engaged in a proprietary business in owning and operating the water system it cannot violate its own zoning ordinance. Therefore, the water works board cannot do so. We have so stated to eliminate that question from the problem.

It results from the foregoing that the judgment of the circuit court should be reversed and one here rendered by which the strict application of the provisions of the zoning ordinances of the City of Birmingham be modified so as to permit the water works board of said city to erect and use the proposed water tank at the location described in this proceeding, and that a permit for its construction, maintenance and operation should be issued by the board of adjustment or other appropriate officer of the City of Birmingham.

The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Reversed and rendered.

All the Justices concur.