227 So.2d 578

**CITY OF HUNTSVILLE, a Municipal Corp., et al.**

v.

**Marvin T. MORRING.**

8 Div. 252.

Supreme Court of Alabama.

Oct. 23, 1969.

Charles H. Younger, Ford, Caldwell, Ford & Payne, Bell, Richardson, Cleary, McLain & Tucker, and L. Tennent Lee, III, Huntsville, for appellants.

Cloud, Berry & Ables and Jerry Stapp, Huntsville, for appellee.

**COLEMAN, Justice.**

The respondents appeal from a decree declaring that one of the respondents; to wit, the Medical Clinic Board of The City of Huntsville, herein called the Clinic Board; may not construct a medical clinic or hospital upon 5 acres of land, which is located in a Residence 1A zone under the zoning laws of Huntsville, and lease the same to Drake Associates, Inc., herein called Drake.

The trial court expressed the opinion that the proposed use of the property would not be a municipal, county, state, or federal use, and, such use would not be permitted in a Residence 1A zone in Huntsville unless the Board of Adjustment granted a special exception allowing such construction.

In their brief, counsel for appellants refer to the case of Drake Associates, Inc. v. Letson, 277 Ala. 512, 172 So.2d 536. The cited case, as we understand it, involved the same five acres of land here involved, a special exception granted by the Board of Adjustment, other proceeding related thereto, and some of the parties to the instant suit.

The parties stipulated that complainant resides in a Residence 1A district in Huntsville " . . . . and that the proposed hospital is to be located within the same district bracket 1A in" Huntsville. Complainant testified that, in his best judgment, he lived 100 yards from ". . . . the sign which they have constructed on Drake Avenue." We understand that the sign is on the lot on which it is proposed to construct the hospital and that complainant owns his home.

The Huntsville zoning ordinance provides that, in a Residence 1A district, lands and buildings shall be used only for single family dwellings, certain agricultural uses, churches, certain accessory uses, and:

> "4.13—Municipal, county, state, or federal use; including publicly owned or operated schools, libraries, museums, and art galleries."

The question for decision is whether Section 4.13 permits the construction and operation of the hospital in a Residence 1A district as is proposed in the instant case. Respondents contend that Section 4.13 permits such use and complainant contends to the contrary.

The respondents include eight natural persons who are doctors that practice medicine. The eight doctors own all the stock and include all the officers and directors of Drake. Drake is a private Alabama corporation.

The Clinic Board is a public corporation organized pursuant to Act No. 516, 1955 Acts, Vol. II, page 1160, as amended by Act No. 109, 1965 Acts, Special Session, Vol. I, page 153. See 1958 Recompiled Code, Title 37, § 853 et seq.

The original bill of complaint was brought against the City of Huntsville as the sole respondent.

Drake filed petition for leave to intervene wherein it averred that Drake is the owner of the land here involved and that the interests of the City of Huntsville are different from the interests of Drake and that the interests of Drake will not be adequately represented by the City of Huntsville.

The eight doctors filed petition for leave to intervene and averred that their interests would not be adequately represented by the City of Huntsville.

The Clinic Board also filed petition for leave to intervene, averring that any decree rendered in this cause will materially affect the Clinic Board's rights. The court permitted all petitioners to intervene.

The trial court found that on April 20, 1965, Drake and the eight doctors made an agreement with Stubbs, Watkins and Lombardo, Inc., herein called Lombardo, whereby Drake agreed to convey, without consideration, to a Medical Clinic Board, to be organized with the approval of the Huntsville City Council pursuant to the provisions of Acts No. 516 and No. 109, supra, five acres of land in a Residence 1A zone for construction thereon by the Clinic Board of a hospital, doctors' offices, and facilities incidental thereto; Drake agreed to enter into a lease with the Clinic Board whereby the Clinic Board would become obligated to acquire, equip, and complete on said five acres the said hospital and facilities and the Clinic Board would lease the hospital and facilities to Drake for operation by Drake for a term at least as long as the last maturity of the bonds to be issued by the Clinic Board; the agreement contemplated that the Clinic Board would issue the bonds to obtain funds to build and equip the hospital; Drake would agree to pay rent sufficient to repay the principal and interest on the bonds; the eight doctors agreed to maintain in effect life insurance on their lives with proceeds to be applied to redemption of the

bonds in case of death; and the eight doctors each agreed with Stubbs, Watkins and Lombardo, Inc., to purchase $200,000.00 worth of bonds to be issued by the Clinic Board, payment to be made upon delivery of the bonds to Drake as agent for the doctors.

On April 22, 1965, the Huntsville City Council authorized three named individuals to form a corporation as authorized by Acts No. 516 and No. 109, supra; and, on April 23, 1965, the named individuals filed their certificate with the judge of probate and he issued a certificate of incorporation to the Clinic Board.

On April 23, 1965, Lombardo and the Clinic Board made an agreement whereby the Clinic Board agreed to sell and Lombardo agreed to buy not less than $1,450,-000.00 of first mortgage bonds to mature over a period not exceeding 25 years, subject to all the terms of the agreement of April 20, 1965, and certain additional terms including the condition that contracts shall have been entered into by the Clinic Board for construction of the hospital. On May 4, 1965, the Clinic Board resolved to enter a contract with certain named architects for architectural services.

Act No. 516, as amended by Act No. 109, recites that its purpose is to provide for boards as public agencies and instrumentalities of the State of Alabama to promote the acquisition of health facilities in order to promote the public health.

Among the powers granted to the corporation are the power to acquire by purchase, exchange, lease, construction or otherwise one or more medical clinics and to improve, enlarge, maintain, equip, and furnish the same; to lease to others one or more clinics and to charge and collect rent therefor; and to sell, exchange, convey, and grant options to any lessee to acquire any medical clinic and any or all of its properties.[1]

With respect to the power of the Clinic Board to operate the hospital, we think that the trial court correctly found as follows:

"The Act providing for the incorporation of a public corporation to provide a medical clinic approved September 9, 1955 (Title 37, Sections 853–863) and amended March 26, 1965 (Act 109 of 1965 Special Session) does not provide therein that the Board operate the medical clinic. It appears to have been the intent of the Legislature to provide a way in which a medical clinic and clinical facilities could be built, equipped and furnished and then leased to others for operation without creating an obligation or debt of any municipality. The Act does not make any restriction as to whom the facilities may be leased."

The court further found:

"The hospital which the Medical Clinic Board expects to construct and lease to Drake Associates, Inc., is not designed for any municipal, county, state or federal use but will be leased by the Medical Clinic Board to a private corporation, composed of the eight doctors who have intervened as Respondents. This lease

---

1. As amended by Act No. 109, Section 5 of Act No. 516 provides, among other things:

"`. . . . Whenever the principal of and interest on all bonds of such corporation payable from the revenues derived from the operation of one or more medical clinics owned by such corporation shall have been paid in full, then the board of directors of the corporation may by resolution determine that the purposes for which the corporation was formed have been substantially complied with, and the board of directors of the`

corporation shall thereupon execute and file for record in the office of the Judge of Probate of the county in which the corporation is organized a certificate of dissolution reciting such facts and declaring the corporation to be dissolved. . . . . Upon the filing of such certificate of dissolution, the corporation shall stand dissolved, and title to all funds and properties owned by it at the time of such dissolution shall vest in the municipality, and possession of such funds and properties shall forthwith be delivered to such municipality. . . . ."

being authorized under the provisions of the Medical Clinic Act. The Act under which the Medical Clinic Board is incorporated does not contemplate the use of the property which it acquires by the Board as a medical clinic. The Board is incorporated as a public corporation for the purpose of acquiring, owning and leasing a medical clinic, and no authority is given to operate it; just as Industrial Development Boards are incorporated under that act to acquire, won (sic, own), lease and dispose of properties to promote industry and develop trade with the restraint that such Board shall not be authorized to operate any business acquired by it.

"The Court is of the opinion that the use of the property to be deeded to 'The Medical Clinic Board of the City of Huntsville, Alabama—1965' for the construction thereon of the proposed hospital under the provisions of the Medical Clinic Act (Title 37, Sections 853–863 of the Code, as amended) would not be a municipal, county, state or federal use and would not be permitted in a Residence '1A' District under the Zoning Ordinances of the City of Huntsville, Alabama, unless the Board of Adjustment granted a special exception allowing such construction."

Respondents say that "THE *OPERATION* OF A HOSPITAL IS A 'GOVERNMENTAL' FUNCTION." (Emphasis Supplied)—citing Thompson v. Druid City Hospital Board, 279 Ala. 314, 184 So.2d 825; Clark v. Mobile County Hospital Board, 275 Ala. 26, 151 So.2d 750. Those two cases had to do with the immunity of a hospital board from suit for negligence of employees and had nothing to do with immunity from zoning ordinances. Moreover, in those cases the boards were authorized by statute to operate the hospitals, and it appears that the boards did operate the hospitals.

Appellants say that the fact that the proposed hospital is to be leased to a private corporation for its operation does not change its character as a municipal use and cite the four cases next discussed.

In Bloomfield v. New Jersey Highway Authority, 18 N.J. 237, 113 A.2d 658, the court held that the Authority was an agency of the state empowered ". . . . to construct, maintain, repair and operate . . . ." the 165-mile limited access *highway and was not subject to Bloom*field's zoning regulation and that the leasing of certain incidental facilities in the service area of the highway would not make the service area subject to the town's zoning regulations because the court found nothing in the statutes ". . . . to suggest that in this regard the Parkway's service facilities were to be differentiated from its traveled right of way." In the instant case, the entire hospital is to be leased, not merely an incidental facility. There are other differences.

In Aviation Services v. Board of Adjustment of Hanover Tp., 20 N.J. 275, 119 A.2d 761, the Town of Morristown, during the period from 1931 to 1941, had acquired a 235-acre tract of land located within the boundaries of the nearby Township of Hanover. In 1941, pursuant to agreement between the United States and Morristown, airport development was initiated and use had continued until the time of the opinion in 1956, Morristown having assumed control of the *"operation"* after World War II. In 1946, Hanover Township zoned the airport tract. Morristown made leases of the airport facilities to private persons and corporations and Aviation Services was one of the lessees and operated an aircraft maintenance service and flight school in a building at the airport. Aviation Services desired to enlarge the building and applied for permit to do so. Relying on a statute which provided that a municipality "'. . . . may acquire, establish, construct, own, control, lease, equip, improve, maintain, operate and regulate airports . . . . within or without the limits of such municipality,'" the court held that enlargement of the building was not subject to the restrictions of

Hanover Township's zoning ordinance. Acts No. 516 and No. 109 differ materially from the New Jersey statute.

In Pruett v. Dayton, 39 Del.Ch. 441, 166 A.2d 440; 39 Del.Ch. 537, 168 A.2d 543; the court held that plaintiffs were not entitled to enjoin the Levy Court of New Castle County from using land for a sanitary land-fill or garbage dump, where the statute permitted the Levy Court to acquire land for sanitary land-fill " 'at any place within the County that it deems advisable' " and permitted the Levy Court to contract with other entities to handle the operation. The court said that the zoning code did not apply to the Levy Court because certain power in this area was granted to the Levy Court by a separate statute approved sixteen days after approval of the zoning statute. The material difference between the Delaware statute and the Alabama statutes in the instant case is obvious.

In Lien v. City of Ketchikan, 383 P.2d 721, (Alaska), the court was concerned with appropriation of money for a hospital to be leased to a religious order, and laws relating to a "home rule city." We do not think that the Alaska case has to do with zoning.

Respondents rely on Lees v. Sampson Land Co., 372 Pa. 126, 92 A.2d 692, 40 A.L.R.2d 1171, where the court refused to enjoin the construction of a sewage disposal plant in a residential zone. Without extended discussion, we note the following statement by the Pennsylvania court:

"... there is the further fact that the Commissioners of Penn Township accepted the proposal of the corporate defendants with the specific condition that upon completion of the plant, it would be operated and maintained by the Township as part of its public sewer system ...." (372 Pa. at 131, 92 A.2d at 695)

In the instant case, neither the city nor the Clinic Board proposes to operate the hospital. If the hospital were to be operated by the city, directly or by its agency or creature such as the Clinic Board, it might be reasonably argued that the use would be a municipal use. Thompson v. Druid City Hospital Board, supra; Clark v. Mobile County Hospital Board, supra. Such an operation, however, is not proposed or even authorized by Acts No. 516 and No. 109, supra. The operation is to be by a lessee, a private corporation, which is not in any sense an agency or creature of the city. We do not think that operation of the hospital by the lessee is a municipal use. Suppose a patient is injured as the result of the negligence of a person employed by Drake to work in the hospital. Could Drake claim immunity from liability on the ground that Drake was an agency of the city engaged in performance of a governmental function? We think the answer must be that Drake is not an arm or agency of the city and, therefore, not immune. Clearly the city would not be liable under the doctrine of *respondeat superior* for the negligence of Drake's employee, whether the city be entitled to governmental immunity or not, because the employee would not be in any sense an employee of the city or of an agency of the city.

We conclude that the proposed use of the five acres of land here involved is not a use by the City of Huntsville or the Clinic Board but is a private use by Drake and is not a municipal use under Section 4.13 of the Huntsville zoning ordinance or under the rule that ordinarily exempts a governmental function from zoning regulation. For opinions which indicate that there may be exceptions to the general rule of zoning exemption for governmental functions, see: Alabama Alcoholic Beverage Control Board v. Birmingham, 253 Ala. 402, 44 So.2d 593; Jefferson County v. City of Birmingham, 256 Ala. 436, 55 So.2d 196.

The decree appealed from is in accord with the stated conclusion and is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, BLOODWORTH, and McCALL, JJ., concur.