918 So.2d 119 (2005)
Charles CUNNINGHAM et al.
v.
CITY OF ATTALLA et al.
2031024.
Court of Civil Appeals of Alabama.
June 30, 2005.
*120 Russell A. McGill of Brunson & Associates, Attorneys, P.A., Gadsden, for appellants.
H. Edgar Howard of Ford, Howard & Cornett, P.C., Gadsden, for appellees.
MURDOCK, Judge.
This is a zoning case concerning a warehouse owned by the City of Attalla ("the City") and used for the storage of City property and equipment. Charles Cunningham, Preston Nix, and Emerson Crook ("the plaintiffs") appeal from a summary judgment in favor of the City, Charles O'Rear, individually and in his capacity as Mayor of the City, and the Planning Commission of the City of Attalla (sometimes collectively referred to as "the defendants"). We affirm.
In 1973, the City adopted its current zoning ordinance, which provided for four residential classifications, two business classifications, and two manufacturing classifications. The property at issue here ("the property") is located in an R-3 (multifamily residential) district. Permitted uses in an R-3 district include single-family dwellings, apartments, certain agricultural uses, and parks and playgrounds. Specified additional uses are allowed in an R-3 district after approval by the board of adjustment, including community and recreation buildings, fire stations, auditoriums, field houses, and athletic fields. All uses not specifically permitted are prohibited.
The property contains a two-story warehouse-like structure ("the building"), which was built before 1973, that has a metal siding exterior and that has an area of approximately 7,500 square feet. The City purchased the building and the property on which it was located in July 2000, and it is currently using the building for the storage of City equipment and supplies.
Warehouses and storage buildings are permitted in an M-1 (light industry) district, but not in an R-3 district. The board of adjustment did not approve any additional use for the property, nor was a use variance ever granted for the property. Thus, the use of the building as a warehouse or storage facility is not a conforming use under the zoning ordinance.
Under the City's zoning ordinance, however, any nonconforming use of property in existence at the time the zoning ordinance was adopted is "grandfathered" and may continue until the nonconforming use is abandoned. The building was in use as a warehouse when the zoning ordinance was adopted in 1973. In 1999, the building was being used by its owner for recycling of air-conditioning and heating-unit parts and for storage. In December 1999, Herb *121 Rathrock purchased the property with the intent to use the building as a warehouse in which to store inventory for his vending business and in which to park his three work vehicles overnight. Before closing on the purchase of the property, Rathrock asked the City if the property was zoned to permit its use as a warehouse. The appropriate city officials gave Rathrock assurances that the property could be so used, and Rathrock purchased the property.
Soon after Rathrock purchased the property, and despite the fact that the use of the building as a warehouse apparently was "grandfathered," Rathrock was notified by then Mayor James Denham that the property was not zoned for use as a warehouse and that the City would not issue a business license for the property. Upon receiving this notification, Rathrock suspended his plans to make repairs and renovations to the building and to prepare the building for his intended use. Rathrock never used the property for any business purpose.
Rathrock instead negotiated with Mayor Denham and other City officials for the City to purchase the property from him. In July 2000, the City purchased the property from Rathrock at the price he originally paid for it. The City did not put the building to any use until approximately one year after Mayor Denham left office in October 2000  that is, until late 2001.
During this interim period, the City considered several options for use of the property, including conversion to a recreation/activity center, sale of the property to the public-housing authority that owned nearby land, and moving the building itself to an industrial park, leaving the concrete slab available for outdoor basketball courts.
The City eventually determined that the housing authority did not wish to purchase the property and that the other options were too expensive. The City then determined that the building should be used for storage. At the time of the trial, the building was being used to store a spare (antique) fire truck, tractors and mowers, seasonal decorations, PVC pipe, cold-mix asphalt, and other City equipment and materials. Use of the building allowed the City to consolidate items previously stored at several scattered storage locations and to move the PVC pipe indoors, where it was less subject to deterioration. Mayor O'Rear testified that the building is accessed by City employees three to four times per week.
While the building was sitting vacant and the City was determining how to proceed, the City demolished a "ramshackle house" on the property that was described as "an eyesore," cut the grass, cleaned out the building, and made some minor repairs. Mayor O'Rear testified that City workers have received compliments from some neighborhood residents on the improved appearance of the property.
The present action was filed in August 2002[1] against the defendants alleging violation of the City's zoning ordinance, fraud, nuisance, and breach of contract. The complaint alleged that the plaintiffs were residents "who live and reside in close proximity to [the property]," and it sought compensatory and punitive damages, costs, interest, attorney fees, and such other relief as the court may deem appropriate. With respect to the claims alleging nuisance and breach of contract, but not the other claims, the plaintiffs also sought declaratory and injunctive relief, including abatement of the zoning violation and an *122 injunction against future nonconforming use of the property.
The defendants' answer asserted, among other things, the affirmative defenses of lack of standing and immunity under Ala. Code 1975, § 11-47-190. In this appeal, the City does not argue either of those defenses.
After discovery had been completed, both sides filed motions for a summary judgment, which were supported by evidentiary submissions and briefs. The plaintiffs' motion for a summary judgment was based solely on the alleged violation of the City's zoning ordinance and contains no argument or statement of facts regarding fraud, breach of contract, or nuisance. Moreover, the only relief requested by the plaintiffs in their motion for a summary judgment was a declaration that the City's use of the property was a nonconforming use and an injunction prohibiting the continued use of the property as a storage facility and requiring the City to bring the property into conformity with the zoning ordinance.
The defendants argued below that the City was not subject to its own zoning ordinance because it was using the property for a governmental, as opposed to a corporate or proprietary, function, and because the prior nonconforming use had not been abandoned or discontinued. The defendants also argued that the claims alleging fraud, nuisance, and breach of contract should be resolved against the plaintiffs because they were not supported by any evidence.
In June 2004, the trial court entered a summary judgment for the defendants on all issues without stating any findings of fact or conclusions of law. The plaintiffs filed a timely appeal.
The plaintiffs contend in this appeal that (1) the City's zoning ordinance prohibits the use of the property for a warehouse because the property is located in an R-3 district, (2) the prior nonconforming use lapsed or was abandoned when the building was unused between December 1999 and late 2001, (3) the City is not exempt from the zoning ordinance because storage of equipment and supplies is a corporate or proprietary function, not a governmental function, and (4) because the City represented to Rathrock that he could not use the property as a warehouse, it should be equitably estopped from raising the defense of governmental function and denying that the nonconforming use of the building had lapsed.[2] The plaintiffs make no argument in this appeal with respect to their claims of fraud, nuisance, and breach of contract.
"We review a summary judgment de novo, applying the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing `that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law.' Rule 56(c)(3), Ala. R. Civ. P. The court must view the evidence in a light most favorable to the nonmoving party and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990). If the movant meets this *123 burden, `the burden then shifts to the nonmovant to rebut the movant's prima facie showing by "substantial evidence."' Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992)."
Bailey v. R.E. Garrison Trucking Co., 834 So.2d 122, 123 (Ala.Civ.App.2002).
The dispositive issue in this appeal is whether the zoning ordinance may be enforced against the City. Our Supreme Court held in Lauderdale County Board of Education v. Alexander, 269 Ala. 79, 110 So.2d 911 (1959), that
"when a city is engaged in a proprietary business, it is subject to its own zoning regulations; but that when engaged in a governmental function, it is not subject to its own zoning regulations."
269 Ala. at 86, 110 So.2d at 917-18. Lauderdale County Board of Education involved a facility similar to the building at issue here, a "County Barn" proposed to be constructed by the county board of education as a facility to garage up to 92 school buses, to store coal and school supplies, and to serve as a repair and maintenance shop for the county school system. The site for the storage and maintenance facility was within the corporate limits of the City of Florence in an area zoned for residential use. Our Supreme Court held that the city's zoning regulations could not be enforced to prevent the construction and operation of the facility within a residential zoning district.
The Supreme Court concluded in Lauderdale County Board of Education that a county board of education is acting in a quasi-legislative function when it locates schools and provides for the transportation of pupils. The use of the "County Barn" was therefore classified as a governmental function, although the Court did not provide any detailed analysis or rationale for that conclusion. Because the school board was engaged in a governmental function, the construction and operation of the facility was not subject to a city's zoning regulations. 269 Ala. at 86-87, 110 So.2d at 918.
More recently, in Lane v. Zoning Board of Adjustment of Talladega, 669 So.2d 958 (Ala.Civ.App.1995), this court held that the construction of a county jail was a governmental, not a proprietary, function and was therefore not subject to city zoning regulations. The court stated that "[a] function is a governmental function if it is the means by which the governing entity exercises the sovereign power for the benefit of all citizens." Id. at 959-60. This court noted that the construction of a jail is mandated by state statute, but it did not limit governmental functions to mandatory duties.[3]
There are only a few other Alabama cases concerning whether governmental buildings or facilities were subject to municipal zoning regulations, and all of them apply the governmental/proprietary distinction. The uncertainty of the outcome in such cases arises from the difficulty in defining and applying "governmental" and "proprietary" functions. Thus, the operation of a garbage-disposal area (i.e., a landfill) has been held to be a governmental function exempt from zoning regulations, City of Birmingham v. Scogin, 269 Ala. 679, 115 So.2d 505 (1959), but the operation of a sewage-disposal plant has been held to be proprietary and subject to zoning regulations. Jefferson County v. City of Birmingham, 256 Ala. 436, 441, 55 So.2d *124 196, 200 (1951). See also, Water Works Bd. of Birmingham v. Stephens, 262 Ala. 203, 208, 78 So.2d 267, 272 (1955)(the use of a large water-supply tank was proprietary and subject to zoning regulations); City of Huntsville v. Morring, 284 Ala. 678, 683, 227 So.2d 578, 583 (1969) (suggesting in dicta that the operation of a municipal hospital would be a governmental function not subject to zoning regulations; mentioning possible "exceptions to the general rule of zoning exemption for governmental functions"); Alabama Alcoholic Beverage Control Bd. v. Birmingham, 253 Ala. 402, 408, 44 So.2d 593, 598 (1950)(state-owned liquor store is "governmental," but not necessarily exempt from zoning regulations). In Downey v. Jackson, 259 Ala. 189, 193, 65 So.2d 825, 827 (1953), a nuisance case, our Supreme Court held the use of a baseball field in a public park to be a governmental function because "[i]t is therefore done by authority of law. And it is not done for profit. It is not of a proprietary nature, but under the police power to promote the health and well-being of the people."
Both sets of parties agree that the governmental/proprietary function distinction is dispositive, but they disagree as to whether the use of a warehouse/storage facility is a governmental or proprietary function. The issue is clouded by the absence of a clear definition of "governmental function." Many of the early cases applying the governmental/proprietary distinction to zoning cases did not clearly define those terms or explain why a particular activity was classified as governmental or proprietary. For example, in Scogin, supra, our Supreme Court held that the operation of a garbage-disposal area was a governmental function exempt from zoning regulations, but it noted that other precedents established that a sewage-treatment plant was a corporate and proprietary function that was subject to zoning regulation. Scogin did not explain why garbage and sewage were treated differently, except by citation to earlier cases designating one activity as governmental and the other as proprietary.
The governmental/proprietary distinction in zoning cases was imported from cases involving municipal immunity against tort liability,[4] and the zoning cases as a group partake of the anomalies that led our Supreme Court in 1963 to remark in reference to municipal tort liability cases that application of the governmental/proprietary distinction "to the facts of a particular case has led to seemingly incongruous and diverse results. A logical approach to the problem is not possible, nor do we think feasible." Hillis v. City of Huntsville, 274 Ala. 663, 667, 151 So.2d 240, 244 (1963). In Jackson v. City of Florence, 294 Ala. 592, 320 So.2d 68 (1975), a case involving municipal immunity from tort liability, our Supreme Court noted the "curious categories" of governmental versus proprietary functions and concluded that "the only clue to whether a particular function is governmental or corporate must be found in cases expressly declaring that particular function to fall within one or the other category." 294 Ala. at 597, 320 So.2d at 72.[5]
*125 Nor is the confusion over this distinction unique to Alabama law. One commentator discussed the issue as follows:
"Under this doctrine, a municipality may carry out its governmental functions without regard to zoning restrictions, but it is subject to such restrictions when it is engaged in a proprietary function. The great difficulty lies in determining which functions are governmental, and which are proprietary. This distinction is of ancient vintage, but it is neither clear nor stable. What is regarded as governmental for one purpose (for example, municipal tort liability) is not necessarily so regarded for a different purpose (for example, condemnation of municipal land). And a proprietary function of a municipal government may be considered a governmental function at a later date."
2 Kenneth H. Young, Anderson's American Law of Zoning § 12.03 (4th ed.1996) (footnotes omitted).
In the absence of a clear definition of "governmental function," and in light of the Jackson court's observation, we conclude that the resolution of the present case depends primarily on analogy to previously decided cases. The only closely analogous facility that the parties have pointed out, or that we have found, is the "County Barn" at issue in Lauderdale County Board of Education. Like that facility, the building at issue here is used by a governmental entity to store vehicles, equipment, and supplies necessary to carry out that entity's statutorily authorized functions and purposes.[6] Therefore, based on analogy to the storage and maintenance facility in Lauderdale County Board of Education, it appears that a City's use of the warehouse in the present case should be classified as a "governmental function."
The plaintiffs assert that this case is distinguishable from Lauderdale County Board of Education and Lane because "governmental functions" are limited to those activities that a governmental entity is mandated by statute to perform and because there is no specific statutory mandate for the City to operate a storage facility or to perform the functions *126 facilitated by the storage facility. The plaintiffs' focus on mandatory activities is misplaced. Of the cases holding that governmental functions are not subject to zoning regulations, only Lane involved a mandate, as opposed to the power and authority to perform a function. For example, the school board in Lauderdale County Board of Education was authorized to provide public schools and transportation for pupils, but it was not mandated to establish a bus garage or even to own buses. See Shores v. Elmore County Bd. of Educ., 241 Ala. 464, 3 So.2d 14 (1941)(transportation of pupils in privately owned buses pursuant to contract versus acquisition of buses by the school system). Lane, on the other hand, did involve a statutory mandate that the county commission construct and maintain a jail, but the opinion in Lane contains no suggestion that the county commission would have been subject to the city zoning regulations if the structure at issue had been one that the county was authorized, but not mandated, to build.
Finally, the ordinary meanings of the terms "governmental" and "proprietary" support the conclusion that the City's use of the building is "governmental." The common-sense meaning of "governmental" includes those activities reasonably necessary to carry out the City's authorized functions and activities. Conversely, the building and the items stored therein are not "proprietary" in the usual sense of that word because the City has no commercial or business purpose for the building or the items stored therein, the City receives no revenue from the use of the building or the items stored therein, the City does not make the building available to the public or to commercial establishments, and the building is not an adjunct to any commercial activity.
Given the facts of this case and the nature of the issues presented to us, and on the basis of the foregoing analysis  including particularly the above-discussed decisions of our Supreme Court  we conclude that the trial court's summary judgment in favor of the defendants is due to be affirmed. We therefore need not reach the issue whether the City abandoned the use of the building as a warehouse that was "grandfathered" under the City's zoning ordinance.
AFFIRMED.
THOMPSON, J., concurs.
CRAWLEY, P.J., concurs specially, with writing, which PITTMAN and BRYAN, JJ., join.
CRAWLEY, Presiding Judge, concurring specially.
Although I am forced to concur with the main opinion based on the application of the doctrine of governmental function, I write specially to note my dissatisfaction with the result mandated by the application of the law in this case. The main opinion does not address the issue of abandonment of use. However, if the property had been abandoned, then the City's only claim of right to use it for a warehouse would be under the doctrine of governmental function.
Article 4, Section 1, of the City's zoning ordinance states:
"It is the intent of this ordinance to permit these non-conformities to continue until they are removed, but not to encourage their survival. It is further the intent of this ordinance that nonconformities shall not be enlarged upon, expanded or extended...."
Additionally, the City refused to issue a business permit to Herb Rathrock to use the building at issue as a warehouse to store vehicles. The City then bought the *127 building from Rathrock, did not use it for almost two years, and then used it to store an antique fire truck, Christmas decorations, and sewage pipe.
As stated in the main opinion, the City admitted that the property was not used for nearly 2 years, a period greater than 6 months and perhaps greater than 18 months. Article 4, Section 4(e) of the zoning ordinance provides:
"When a non-conforming use of a structure, or structure and premises in combination, is discontinued or abandoned for six (6) consecutive months or for eighteen (18) months during any (3) year period (except when government action impedes access to the parties), the structure, or structure and premises in combination, shall not thereafter be used except in conformity with the regulations of the district in which it is located."
The City clearly abandoned the use of the building as a warehouse. Moreover, the City told Rathrock that he could not use the building as a warehouse. It is unfortunate that the plaintiffs failed to demonstrate reliance in regard to their equitable-estoppel argument. If the plaintiffs had demonstrated reliance, I would have been inclined to rule in their favor. The City's enunciated policy goal espoused by its own zoning ordinance is to discourage nonconforming uses. The City also made statements that the building could not be used as a warehouse. Subsequently, the City acquired the building, abandoned the nonconforming use, and then used the building as a warehouse in contravention of its zoning ordinance. Although the City's actions and the result in this case can hardly be described as discouraging nonconforming uses, the doctrine of governmental function in regard to zoning ordinances, without any authority presented to the contrary, supports the result reached in this case.
PITTMAN and BRYAN, JJ., concur.
NOTES
[1] The initial complaint was filed on behalf of the "Residents of Hughes subdivision," but it was later amended to substitute the three named individuals as plaintiffs.
[2] We find the plaintiffs' equitable-estoppel argument to be without merit. Among other things, the plaintiffs have not demonstrated that they relied to their detriment on the City's representations. See Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala. 1989).
[3] Significantly, the definition in Lane of "governmental function" did not cite to a case involving zoning but to Hilliard v. City of Huntsville, 585 So.2d 889 (Ala.1991), which reaffirmed municipal substantive immunity against tort liability in a narrowly defined class of activities.
[4] One of the early cases cited in Scogin to elucidate the governmental/proprietary distinction was City of Tuscaloosa v. Fitts, 209 Ala. 635, 96 So. 771 (1923), which involved municipal immunity against liability for negligence in the collection of garbage.
[5] The distinction between governmental and proprietary functions was ultimately abrogated in the context of municipal immunity from tort liability in Jackson v. City of Florence. It is not clear that the governmental/proprietary distinction in zoning cases survived Jackson, but Jackson was limited to municipal immunity from tort liability, and we have found no cases abolishing the distinction in zoning cases. See Pennick v. City of Florala, 529 F.2d 1242, 1244 (5th Cir. 1976)(court believed that zoning cases remain good law after Jackson).

Neither side in this case, however, has argued that the governmental distinction is no longer good law. To the contrary, both have submitted the present dispute to us on the basis of that distinction. We are therefore not presented with the issue of the continued viability of the distinction in zoning cases.
[6] The plaintiffs do not argue that the City lacked the power and legal authority to own and operate the building or to make use of the items stored therein. We note, moreover, that the City is authorized to acquire, own, and operate the property and the building by, among other things, Ala.Code 1975, § 11-47-3 (municipality may contract for the construction, repair, etc. of municipal buildings), and § 11-40-1 (ownership and control of municipal property). See also Parker v. City of Mountain Brook, 286 Ala. 241, 246, 238 So.2d 868, 873 (1970)(nuisance case; municipal public-works facility for storage and maintenance of equipment is "entirely proper and legally permissible").

The items stored in the building are likewise necessary and proper to carrying out various functions that the City is authorized and empowered to carry out. See, e.g., Ala. Code 1975, § 11-43-140 (authority to operate a fire department); State ex rel. Hyland v. Baumhauer, 244 Ala. 1, 8, 12 So.2d 326, 330 (1942)(fire department is performing a governmental rather than proprietary function); § 11-48-4 (general authority to construct streets, sidewalks, and drainage ditches); Hillis, 274 Ala. at 667, 151 So.2d at 244 (cutting weeds in a ditch along a public street is a governmental function); § 11-47-18 (power to clean streets); § 11-47-130 (power to maintain health and cleanliness of the municipality).