Rel: August 2, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2024

_____

## SC-2023-0516

_____

## City of Helena

## v.

## Pelham Board of Education and Rick Rhoades, Angie Hester, Bob O'Neil, Robert Plummer, Sharon Samuel, and Chuck Ledbetter, in their official capacities as officers and/or members of the Pelham Board of Education

### Appeal from Shelby Circuit Court
### (CV-21-900714)

PER CURIAM.

The City of Helena ("Helena") appeals from the Shelby Circuit Court's order entered in favor of the Pelham Board of Education ("the PBE") and its officers and/or members, in their official capacities ("the board members"),[1] that authorizes the PBE to acquire, develop, and use the real property that is the subject of the dispute between the parties in this case. We affirm the circuit court's order.

## I. Facts

The facts in this case are largely undisputed, and we are familiar with the case because it has been before us once before in City of Helena v. Pelham Board of Education, 375 So. 3d 750 (Ala. 2022).

The PBE is a city board of education that serves students in the City of Pelham ("Pelham") under the authority of § 16-11-1 et seq., Ala. Code 1975. The PBE was first established by a resolution of the Pelham City Council in September 2013, and it began operating in July 2014.

---

[1]Helena sued the following officers and/or members of the PBE: Rick Rhoades, in his capacity as president of the PBE; Angie Hester, Bob O'Neil, Robert Plummer, and Sharon Samuel, in their capacities as members of the PBE; and Scott Coefield, in his capacity as the superintendent of the Pelham City Schools and the chief executive officer of the PBE. During the litigation, Chuck Ledbetter succeeded Coefield as superintendent of the Pelham City Schools and chief executive officer of the PBE, and Ledbetter was substituted as a defendant. See Rule 25(d)(1), Ala. R. Civ. P.

Helena is a municipal corporation organized and incorporated pursuant to § 11-41-1 et seq., Ala. Code 1975. Helena and Pelham are next to each other geographically, and they are both located in Shelby County, but the school-aged students in Helena are served by the Shelby County Board of Education ("the SCBE"), and qualified electors of Helena may vote in elections for members of the SCBE and its superintendent.

The dispute between the parties concerns approximately 52 acres of real property located adjacent to Pelham High School that the PBE purchased on June 29, 2021, for a total purchase price of approximately $468,000 ("the property"). Although the principal high-school building for Pelham High School is located within the corporate limits of Pelham, the property, which is directly south of the Pelham High School campus, is located within the corporate limits of Helena. The property has not been deannexed by Helena or annexed by Pelham, and Helena has been collecting property taxes on the property. In 2018, the property was zoned for single-family residential use under Article XXIV, § 3, of the Helena Zoning Ordinance. Specifically, the property is zoned as a "Special District -- Planned Residential District."

The PBE purchased the property with the intent of constructing an athletic field and a parking lot on the property to serve the students who attend Pelham High School and who participate in physical education and school-sanctioned interscholastic sports ("the athletic-field project"). Plans and sketches illustrating the design, configuration, and approximate location of the athletic-field project were submitted to State of Alabama authorities for public-school improvements, including, but not limited to, the Alabama Division of Construction Management, and those plans and required submissions were reviewed and approved by the relevant State authorities. In October 2021, the PBE began land-clearing and preliminary-construction activities on the property. The athletic-field project was delayed at certain periods during the course of this litigation because Helena issued stop-work orders based on its zoning ordinance. However, in February 2023, the athletic-filed project was substantially completed according to an Alabama Division of Construction Management final inspection, and Helena does not dispute that it is substantially completed.

On November 29, 2021, Helena filed a complaint in the Shelby Circuit Court against the PBE and the board members. Helena's

complaint sought a judgment declaring that the PBE lacked the "power or authority to construct, maintain, or operate school facilities within a municipality other than its own." Helena also sought an injunction to prevent the PBE and "its contractors, agents, and employees from continuing its construction activities on the Property and grading, altering or otherwise disturbing the Property."

On December 3, 2021, the PBE and the board members filed an answer to the complaint and a counterclaim. In their answer, the PBE and the board members admitted many of the complaint's factual allegations, but they asserted that the PBE was exempt from Helena's zoning ordinance because the athletic-field project constituted a "governmental function." In their counterclaim, the PBE and the board members sought preliminary and permanent injunctive relief prohibiting Helena from stopping or interfering with the athletic-field project, and they sought an award of damages incurred because of the delays to the project allegedly caused by Helena's stop-work orders. On December 30, 2021, Helena filed a motion to dismiss the PBE and the board members' counterclaim.

The parties thereafter filed with the circuit court joint stipulations of facts and accompanying exhibits. On February 1, 2022, the circuit court held a hearing on the parties' pending motions. At the hearing, the circuit court deferred ruling on Helena's motion to dismiss pending its review of the threshold issue of the PBE's authority to undertake the athletic-field project. On May 6, 2022, the circuit court entered an order granting the PBE and the board members' request for a preliminary injunction, preventing Helena from interfering with construction of the athletic-field project and requiring Helena to rescind any stop-work orders or citations it may have issued to the PBE. The circuit court reasoned that "[c]ity zoning ordinances do not apply to the operation of a governmental function by a government body"; that the PBE "is a government body"; that the athletic-field project "is not a proprietary function, rather it is a governmental function, namely the administration and management of free public schools as required by Section 256 of the Alabama Constitution"; and that the PBE "is not a subdivision nor … subservient to the City of Pelham. Rather, it is an agency of the State of Alabama." The circuit court concluded: "The fact that [the PBE] has chosen to purchase and develop property in the City of Helena to provide

6

free public education to students who reside in the [PBE's] school district is a government function it is authorized to carry out."

On May 19, 2022, Helena filed a motion to stay enforcement of the circuit court's order issuing a preliminary injunction and a notice of appeal to this Court. On June 7, 2022, the circuit court denied Helena's motion to stay. On June 16, 2022, Helena filed in this Court an emergency motion to stay enforcement of the order issuing a preliminary injunction; on July 13, 2022, this Court denied that motion.

On October 21, 2022, this Court issued its opinion in City of Helena, reversing the circuit court's May 6, 2022, order issuing a preliminary injunction because, we concluded, the order had failed to comply with Rule 65(d)(2), Ala. R. Civ. P.[2] Specifically, the Court observed that "[n]otably absent from the trial court's order is any statement that the

---

[2]Rule 65(d)(2), Ala. R. Civ. P., provides:

"(2) Every order granting an injunction shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

7

[PBE and the board members] would suffer irreparable harm if the trial court refused to grant the preliminary injunction; additionally, the order does not address whether the [PBE and the board members] have an adequate remedy at law." City of Helena, 375 So. 3d at 753. The Court expressly noted that, because the circuit court had failed to fulfill the procedural requirements of Rule 65(d)(2), "we need not address the other arguments raised by Helena in this appeal, which are directed at the merits of the order," and that "[o]ur holding should not be interpreted as precluding the [PBE and the board members] from requesting that the trial court issue a preliminary injunction that is consistent with this opinion." Id. at 754.

On remand, Helena filed, on November 8, 2022, a motion for a permanent injunction, a ruling on the remaining claims, and the entry of a final judgment. In that motion, Helena announced its intention to reissue stop-work orders because of the absence of a preliminary injunction preventing it from doing so, and Helena subsequently issued stop-work orders to the PBE, its contractors, and employees associated with the athletic-field project. In November 2023, Helena initiated criminal proceedings in municipal court against the board members for

defying the stop-work orders. In response, on December 1, 2023, the PBE and the board members filed in the circuit court a "Motion for Stay of Prosecution," seeking the circuit court's intervention in the municipal-court proceedings. Helena responded on the same date with a motion to strike the PBE and the board members' motion to stay the municipal-court proceedings and a renewed motion for a final judgment.

On March 21, 2023, the PBE and the board members filed an amendment to their counterclaim that supplemented the amount of damages requested as a consequence of Helena's stop-work orders that had impeded construction of the athletic-field project. They also filed a response to Helena's motion for a permanent injunction. On May 9, 2023, Helena filed a renewed motion for a permanent injunction, a ruling on the remaining claims, and the entry of a final judgment.

On July 5, 2023, the circuit court entered an order ostensibly granting declaratory relief in favor of the PBE and the board members on all substantive issues. The circuit court began its order by observing that Helena did not deny that the athletic-field project "serve[s] a governmental function that generally renders [the PBE] exempt from local land use regulations. However, Helena contends that the exemption

does not apply to the circumstances presented here" because the athletic-field project "attempts to develop property for school-related purposes in an adjacent city whose residents are served by a separate school system -- in this case, the Shelby County system." The circuit court further noted that Helena had argued that § 16-11-9, Ala. Code 1975, prohibited the PBE from constructing school facilities outside the corporate limits of Pelham. The circuit court then reiterated its findings from its May 6, 2022, order, and it noted that our decision in City of Helena "did not extend to or affect [the circuit court's] declaratory rulings." Accordingly, the circuit court stated that it "continues to find that Helena is not entitled to prevail on the merits of this controversy." The circuit court then explained its view that Helena lacked the authority to enforce its zoning ordinance against the PBE's athletic-field project because of the well-settled rule that "'"city zoning ordinances [do] not apply to the operation of a governmental function by a governing body, as opposed to a proprietary function." Lane v. Zoning Bd. of Talladega, 669 So. 2d 958, 959 (Ala. Civ. App. 1995) (emphasis added).'" Barnes v. Town Council of Perdido Beach, 375 So. 3d 1, 12 (Ala. 2022) (quoting City of Selma v. Dallas Cnty., 964 So. 2d 12, 16 (Ala. 2007)). The circuit court also rejected

Helena's argument based on § 16-11-9 because, it said, that statute "describes the <u>general</u> administrative and managerial powers vested in city boards of education. The statute <u>grants</u> authority and it does not restrict authority." (Emphasis in original.) The circuit court also concluded that, "because Helena cannot prevail on the merits of the controversy relating to the parties' respective authority and law, other equitable considerations cannot offset or neutralize the dispositive effect of the controlling questions of law that have already been decided by this Court." The circuit court then listed various reasons why it believed the PBE and Pelham High School students would suffer irreparable injury if the athletic-field project was enjoined and why any injury to Helena would be "nominal." The circuit court concluded its order by expressing the view that,

> "[h]ere, the rules of law that empower [the PBE's] function (education) and that restrict Helena's ability to interfere with said government function have been consistently applied by Alabama courts. The law of the case is not subject to variable, case-by-case application. For this Court to amend the Alabama Code to impose such burdens on the exercise of local agency authority would be judicial overreach."

11

Helena appealed from the circuit court's July 5, 2023, order on July 18, 2023, within 14 days of the entry of the order.[3]

## II. Standard of Review

As we noted in the rendition of the facts, the pertinent facts are undisputed, the parties filed lengthy joint stipulations and submissions

---

[3]We note that the circuit court's July 5, 2023, order was interlocutory because the PBE and the board members' request for damages was still outstanding and the circuit court's order left open the possibility for such an award by stating that "[t]he Parties have 30 days to show cause as to why any further relief sought should not be denied, thereby making this order final." However, the order was appealable under Rule 4(a)(1)(A), Ala. R. App. P., because both sides had sought injunctive relief, and the circuit court had refused Helena's request for an injunction. Moreover, although the PBE and the board members insist in their brief that the circuit court entered a declaratory judgment, and Helena does not dispute that point, the circuit court's granted relief appears, at least in part, to be injunctive in nature because it requires Helena not to enforce its zoning ordinance with respect to the property and grants the PBE permission to "use the property at issue for the uses contemplated and approved by the [PBE] and State School Construction authorities." See, e.g., Lem Harris Rainwater Fam. Tr. v. Rainwater, 344 So. 3d 331, 336 (Ala. 2021) (noting that " '[a]n injunction is defined as "[a] court order commanding or preventing an action." Black's Law Dictionary 788 (7th ed. 1999).'" (quoting Dawkins v. Walker, 794 So. 2d 333, 335 (Ala. 2001))). Likewise, unlike the circuit court's May 6, 2022, order that we reversed for a failure to comply with Rule 65(d)(2), Ala. R. Civ. P., the circuit court's July 5, 2023, order expressly explained why the circuit court believed that the PBE and the board members had sustained an irreparable injury and why it believed that they lacked an adequate remedy at law.

to the circuit court, no testimony was heard by the circuit court, and the issues decided by the circuit court were questions of law.

> "'When reviewing a case in which the trial court sat without a jury and heard evidence in the form of stipulations, briefs, and the writings of the parties, this Court sits in judgment of the evidence; there is no presumption of correctness. Old Southern Life Ins. Co. v. Williams, 544 So. 2d 941, 942 (Ala. 1989); Craig Constr. Co. v. Hendrix, 568 So. 2d 752, 756 (Ala. 1990). When this Court must determine if the trial court misapplied the law to the undisputed facts, the standard of review is de novo, and no presumption of correctness is given the decision of the trial court. State Dep't of Revenue v. Garner, 812 So. 2d 380, 382 (Ala. Civ. App. 2001); see also Ex parte Graham, 702 So. 2d 1215 (Ala. 1997). In this case the trial court based its decision upon the stipulations, briefs, writings, and arguments of the parties' attorneys. No testimony was presented. Therefore, we must sit in judgment of the evidence, and the trial court's ruling carries no presumption of correctness.'"

American Res. Ins. Co. v. H & H Stephens Constr., Inc., 939 So. 2d 868, 872-73 (Ala. 2006) (quoting Bean Dredging, L.L.C. v. Alabama Dep't of Revenue, 855 So. 2d 513, 516-17 (Ala. 2003)).

## III. Analysis

On appeal, Helena reiterates the two main arguments it presented in the circuit court for why it believes the circuit court should have entered an injunction preventing the PBE from developing the property and operating the athletic field for the benefit of Pelham High School

13

students. First, Helena contends that § 16-11-9 does not grant the PBE authority to construct and operate an educational facility on property within the corporate limits of Helena that the PBE owns but that has not been annexed into Pelham's corporate limits. Second, Helena argues that the athletic-field project does not comply with Helena's zoning ordinance because it does not qualify as a "Planned Residential District" of a "Special District," and, it says, the "governmental-function" exemption to municipal-zoning ordinances applies only to a government entity "operating within the bounds of its own jurisdiction." Helena's brief, p. 37. We address the two arguments in turn.

A. Does § 16-11-9 Prohibit the PBE's Athletic-Field Project?

Section 16-11-9 provides:

"The city board of education is hereby vested with all the powers necessary or proper for the administration and management of the free public schools within such city and adjacent territory to the city which has been annexed as a part of the school district which includes a city having a city board of education."

Helena contends that § 16-11-9 places a statutory restriction on

"the powers of a city board of education to the geographic limits of its district (or at least prohibit[s] their exercise within the city limits of another city that is in another school district). In Alabama Code § 16-11-9, … the legislature has clearly and definitely defined those limits and determined

14

> where a city board of education may exercise its powers: 'within such city and adjacent territory to the city which has been annexed as part of the school district.'"

Helena's brief, pp. 18-19 (footnote omitted). Helena notes that this Court has stated that "'[s]chool boards are, of course, creatures of statute.'" Marshall Cnty. Bd. of Educ. v. City of Albertville, 479 So. 2d 1127, 1129 (Ala. 1985) (adopting trial court's order as the opinion of the Court). The Court also has indicated that "'creatures of statute … "can exercise only that authority conferred on [them] by [the Legislature]."'" Brown v. Bd. of Educ. of Montgomery, 863 So. 2d 73, 76 (Ala. 2003) (quoting Dillard v. Baldwin Cnty. Comm'n, 833 So. 2d 11, 16 (Ala. 2002), quoting in turn Jefferson Cnty. v. Johnson, 333 So. 2d 143, 145 (Ala. 1976)). Helena concludes that, because § 16-11-9 limits a city board of education's powers to the "city [in which it is located] and adjacent territory to the city which has been annexed as a part of the school district" and because Pelham has not annexed the property on which the athletic-field project is located, the PBE lacks authority to construct and operate the athletic field.

In contrast, the PBE and the board members argue that § 16-11-9

> "confers managerial and administrative responsibilities on boards of education with respect to public schools that are

15

located within the city. But nothing in the statute confines the managerial or administrative prerogatives of the [b]oard to actions or decisions that are conceptually, practically, or operationally restricted to territory within the corporate limits of the city. For example, boards of education can and do regularly recruit employees, pursue grants, attend training programs, and engage in athletic and academic activities outside the boundaries of the city, all undertaken and administratively approved for the benefit of the schools within the city. By the same token, nothing in the language of the statute limits the prerogative of the school board to acquire, develop, or use property that lies outside the district in the service of schools that are within the district."

PBE & board members' brief, pp. 42-43 (footnote omitted).

As we noted in the rendition of the facts, the circuit court agreed with the PBE and the board members, finding that "[s]ection 16-11-9 describes the <u>general</u> administrative and managerial powers vested in city boards of education. The statute <u>grants</u> authority and it does not restrict authority." (Emphasis in original.) However, Helena contends that the circuit court's interpretation of § 16-11-9 "renders the limitation language meaningless and would leave city boards of education without geographic boundaries, as there is no other statutory provision that expressly defines the limits of a city school district." Helena's brief, p. 21.

Helena's interpretation of § 16-11-9 does not comport with a straightforward or plausible reading of the text. See, e.g., <u>DeKalb Cnty.</u>

*LP Gas Co. v. Suburban Gas, Inc.*, 729 So. 2d 270, 275 (Ala. 1998) (observing that, "[i]n determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature" and that "'"where plain language is used a court is bound to interpret that language to mean exactly what it says"'" (quoting Blue Cross & Blue Shield v. Nielsen, 714 So. 2d 293, 296 (Ala. 1998), quoting in turn IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So. 2d 344, 346 (Ala. 1992))). The language "within such city and adjacent territory to the city which has been annexed as part of the school district" is a prepositional phrase that modifies the location "of the free public schools" for which a city board of education is granted "necessary or proper" administrative and management powers. See § 16-11-9. It does not modify the phrase "all the powers" that are vested in a city board of education, i.e., it does not describe the territorial boundaries of the city board of education's powers. Specifically in this instance, § 16-11-9 grants the PBE "all the powers necessary or proper for the administration and management of" Pelham High School, which is located within the corporate limits of Pelham. Those powers obviously include the purchase of property, as § 16-11-12,

Ala. Code 1975, details,[4] and, under the broad language of § 16-11-9 and § 16-11-9.1, Ala. Code 1975, with respect to a city board of education's powers,[5] it also includes developing such property for the management of Pelham High School. Cf. Laidlaw Transit, Inc. v. Alabama Educ. Ass'n, 769 So. 2d 872, 878 (Ala. 2000) (observing that "§§ 16-1-30, 16-11-2(a), 16-11-9, and 16-11-9.1[, Ala. Code 1975,] confer broad authority on a city

---

[4]Section 16-11-12, Ala. Code 1975, provides, in part:

"The city board of education shall have the full and exclusive rights within the revenue appropriated for such purposes, or accruing to the use of the public schools, to purchase real estate … and to make expenditures for the maintenance and repairs of the school grounds, buildings and other property, … to make additions, alterations and repairs to the building and other property erected for school uses, and to make necessary and proper notes, contracts and agreements in relation to such matters."

[5]Section 16-11-9.1, Ala. Code 1975, provides, in part:

"In addition to all authority previously granted by statute, city boards of education … may take such other actions as they deem necessary and appropriate for the proper management of the public schools; provided, however, that such agreements, projects, and programs shall not be in conflict with nor inconsistent with any law or policy of the State Board of Education and shall not conflict with the purposes for which the school system is established."

(Emphasis added.)

school board to take any action it deems necessary and proper for the efficient administration and management of its school system"). Helena has not argued that the PBE lacked the power to purchase the property even though that property has not been annexed by Pelham, but its interpretation of § 16-11-9 would dictate that the PBE lacks such power. Moreover, as the PBE and the board members note, employees of city boards of education take actions outside the territory of their schools all the time, including taking students on field trips, taking students to athletic competitions where other school systems are located, and participating in academic workshops outside city limits. If § 16-11-9 restricted a city board of education's exercise of its powers to the territory in which that board's schools are located, then none of those activities seemingly would be permissible.

The more straightforward reading of § 16-11-9 is that the prepositional phrase "within such city and adjacent territory to the city which has been annexed as part of the school district" simply describes the location of "the free public schools" for which a city board of education exercises its granted powers, not that it circumscribes the territory in which those powers are capable of being exercised. Section 16-11-9

19

empowers the PBE to have all the necessary and proper powers required to administer and manage Pelham High School and the other public schools located in the corporate limits of Pelham. The PBE believes that the development and use of the property for the benefit of Pelham High School students is proper for the management of Pelham High School. It is conceivable that the PBE could be mistaken in that belief, but Helena has not argued that the development and use of the property is not "necessary or proper" under § 16-11-9. Instead, Helena argues that the PBE's action violates § 16-11-9 only because the athletic field is not within territory that "has been annexed as part of the [Pelham] school district." But because § 16-11-9 does not set territorial limits on the PBE's powers, Helena's argument fails.[6]

---

[6]In support of its interpretation of § 16-11-9, Helena mentioned in its briefs and at oral argument the PBE's previous actions with respect to property on which Pelham High School's softball fields are located -- property that is also adjacent to Pelham High School and that was previously within Helena's corporate limits. In March 2015, Helena deannexed the property on which Pelham High School's softball fields are located, and in April 2015 Pelham annexed that property. Helena argues that the legal treatment of the softball fields demonstrates that § 16-11-9 dictates that, before the PBE could develop and use the property currently at issue, Helena would have to deannex the property so that Pelham could annex it.

B. Is the Athletic-Field Project Exempt from the Helena Zoning Ordinance?

Helena argues that even if § 16-11-9 does not restrict the PBE's authority to construct and operate the property, the PBE's actions are still prohibited by Helena's zoning ordinance. The parties stipulated that the property is zoned as a "Special District -- Planned Residential District." Helena Zoning Ordinance, Art. XXIV, § 1, designates "special districts" as those "authorized for the purpose of providing optional methods of land development, which encourages imaginative solutions to environmental design problems." Specifically with respect to Special Planned Residential Districts, Art. XXIV, § 3.1, provides that "[t]he

---

However, Helena leaves out the fact that the softball-fields property had been owned and operated by Pelham High School for 14 years before it was annexed by Pelham. As a March 23, 2015, letter from the PBE to Pelham's mayor and city council explained, "[t]he parcel was acquired in 2001 for the high school softball and practice fields." Even accounting for the fact that the PBE was established in 2013, and that, thus, before that Pelham students were served by the SCBE, no one suggested that the PBE lacked the power to own and operate the Pelham High School softball fields before the deannexation of that property by Helena and the annexation of that property by Pelham.

If anything, the situation with the softball fields represents an example of what occurs when governmental entities cooperate with respect to real-property disputes, not what § 16-11-9 requires for a city board of education to exercise its powers.

21

regulations established in this section are intended to provide optional methods of land development with provisions for commercial, religious, educational and cultural facilities, which are integrated with the total project by unified architectural and open space treatment." The PBE and the board members emphasize that Art. XXIV, § 3.2.6, expressly provides that "Educational Uses" are permitted in Special Planned Residential Districts. Helena emphasizes that Art. XXIV, § 1.2, provides that "[t]he establishment of a Special District will be for the express purpose of improving the tract of land in accordance with the approved plan of development for the particular tract of land and for the use set forth in the development plan." When the property was rezoned in 2018 as a Special Planned Residential District, the approved development plan was for a 206-lot residential subdivision; educational uses were not in the development plan. However, the property was never developed in accordance with that development plan because the property went into foreclosure; it was then purchased by the PBE from First Bank of Alabama. Nonetheless, Helena contends that, because a new development plan has not been adopted by the Helena Zoning Board, the

22

PBE's use for the property is not permitted under Helena's zoning ordinance.

The PBE and the board members do not directly challenge Helena's argument that the athletic-field project violates Helena's zoning ordinance. Instead, they note that it is "well-settled law [that] a city's zoning ordinances do not apply to a city board of education when the board of education is engaging in a 'governmental function.'" PBE & board members' brief, p. 20.

> "'It was once "well settled that city zoning ordinances [did] not apply to the operation of a governmental function by a governing body, as opposed to a proprietary function." Lane v. Zoning Bd. of Talladega, 669 So. 2d 958, 959 (Ala. Civ. App. 1995) (emphasis added). See City of Birmingham v. Scogin, 269 Ala. 679, 690, 115 So. 2d 505, 514 (1959) ("The Alabama cases have long held that zoning does not apply to the operation of a governmental function by a municipality."); Lauderdale County Bd. of Educ. v. Alexander, 269 Ala. 79, 86, 110 So. 2d 911, 918 (1959) ("If a city engaged in a governmental function is not subject to its own zoning regulations, certainly a county engaged in a governmental function is not subject to a city's zoning regulations."); Water Works Bd. of Birmingham v. Stephens, 262 Ala. 203, 78 So. 2d 267 (1955); Alabama Alcoholic Beverage Control Bd. v. City of Birmingham, 253 Ala. 402, 44 So. 2d 593 (1950). "'This distinction is of ancient vintage ....'" Cunningham v. City of Attalla, 918 So. 2d 119, 125 (Ala. Civ. App. 2005) (quoting 2 Kenneth H. Young, Anderson's American Law of Zoning § 12.03 (4th ed. 1996)).'"

<u>Barnes</u>, 375 So. 3d at 12 (quoting <u>City of Selma</u>, 964 So. 2d at 16).[7] In <u>Alves v. Board of Education for Guntersville</u>, 922 So. 2d 129, 133 (Ala. Civ. App. 2005), the Court of Civil Appeals helpfully explained the governmental function/proprietary function distinction in a context similar to this one:

> "'A function is a governmental function if it is the means by which the governing entity exercises the sovereign power for the benefit of all citizens.' <u>Lane v. Zoning Bd. of Adjustment of Talladega</u>, 669 So. 2d 958, 959-60 (Ala. Civ. App. 1995) (citing <u>Hilliard v. City of Huntsville</u>, 585 So. 2d 889, 890 (Ala. 1991)). <u>A public body, such as, in the instant case, a city board of education, engaging in a governmental function, as opposed to a propriety function, is not subject to a city's zoning ordinances</u>. <u>City of Birmingham v. Scogin</u>, 269 Ala. 679, 691, 115 So. 2d 505, 514 (1959) (citing <u>Lauderdale County Bd. of Educ. v. Alexander</u>, 269 Ala. 79, 110 So. 2d 911 (1959); <u>Alabama Alcoholic Beverage Control Bd. v. City of Birmingham</u>, 253 Ala. 402, 44 So. 2d 593 (1950); and <u>Water Works Bd. of Birmingham v. Stephens</u>, 262 Ala. 203, 78 So. 2d 267 (1955)); see also <u>Cunningham v. City of Attalla</u>, 918 So. 2d 119 (Ala. Civ. App. 2005); and <u>Lane v. Zoning Bd. of Adjustment of Talladega</u>, 669 So. 2d at 959."

(Footnote omitted; emphasis added.)

As we noted in the rendition of the facts, Helena does not dispute that the athletic-field project generally would be considered a

---

[7]In <u>Barnes</u>, this Court noted that in <u>City of Selma</u> the Court had "conclud[ed] that municipalities still were immune from zoning ordinances when performing a governmental function." 375 So. 3d at 13.

24

governmental function. It contends, however, that the athletic-field project is not a lawful governmental function in this case because, it says,

> "for a governmental entity to qualify for the governmental function exception, it must first demonstrate that it has the authority to use the property as it proposes. … For the governmental function exception to have any application, the government seeking the exception must first be operating within the bounds of its own jurisdiction. See, e.g., City of Selma v. Dallas County, 964 So. 2d 12, 19 (Ala. 2007)."

Helena's brief, pp. 36-37. Helena further argues that "[t]o hold otherwise -- to hold that one government entity can simply override and ignore the sovereignty and zoning ordinances of another government entity through a mere private purchase transaction -- would amount to permitting functional, hostile annexation by mere purchase of property." Id., pp. 37-38. Helena emphasizes that point by asserting that "[t]his Court has never extended the governmental function exemption to instances where one city government unit is operating outside its boundaries and statutory authority." Id., p. 39 (emphasis added).

That last argument provides a hint as to why Helena's argument is flawed. Helena repeatedly frames the situation in this case as one involving one municipal-government entity -- Pelham -- encroaching

upon the power of another municipal-government entity -- Helena. For example, Helena argues:

> "Municipalities have only those powers delegated to them by the Alabama Legislature, and the Legislature has placed territorial limits on that power. Else, there would be conflict among adjacent municipalities all over the State. To avoid this chaos, the Legislature has provided that a city school district may exercise its statutory powers inside its district and the corporate limits of its sponsoring city."

Helena's brief, pp. 15-16.[8]

But the situation presented in this case does not pit one municipality against another municipality. Public education is a power belonging to the State that is granted in the Alabama Constitution. See Art. XIV, § 256, Ala. Const. 2022;[9] see also State Tax Comm'n v. Board of

---

[8]The amicus curiae brief on behalf of Helena submitted by the Alabama Free and Fair Enterprise Institute ("AFFEI") frames the situation the same way: "A necessary corollary to this rule [the rule that the powers of a municipal corporation are limited by its boundaries and cannot be exercised outside of them] is that two co-equal municipalities cannot have municipal jurisdiction over the same property at the same time." AFFEI's brief, p. 7.

[9]Article XIV, § 256, Ala. Const. 2022, provides:

> "It is the policy of the state of Alabama to foster and promote the education of its citizens in a manner and extent consistent with its available resources, and the willingness and ability of the individual student, but nothing in this Constitution shall be construed as creating or recognizing any

_Educ. of Jefferson Cnty._, 235 Ala. 388, 393, 179 So. 197, 200 (1938) (recognizing that "[w]ithout question the Legislature has plenary power to devise and set up a system of public schools. Section 256 is a constitutional mandate to that end."). Consequently, in their governance of public education, boards of education are independent of the counties and the municipalities in which they are located. "Like county school boards, [city boards of education] are agencies of the state, empowered to administer public education within the cities. As such, a city school board is not a subdivision or agency of the municipal government." _Enterprise City Bd. of Educ. v. Miller_, 348 So. 2d 782, 783 (Ala. 1977). See also _W.R._

---

right to education or training at public expense, nor as limiting the authority and duty of the legislature in furthering or providing for education.

"The legislature may by law provide for or authorize the establishment and operation of schools by such persons, agencies or municipalities, at such places, and upon such conditions as it may prescribe, and for the grant or loan of public funds and the lease, sale or donation of real or personal property to or for the benefit of citizens of the state for educational purposes under such circumstances and upon such conditions as it shall prescribe. Real property owned by the state or any municipality shall not be donated for educational purposes except to nonprofit charitable or eleemosynary corporations or associations organized under the laws of the state."

Meriwether, Factors & Drayage, LLC v. Pike Rd. Volunteer Fire Prot. Auth., 291 So. 3d 1178, 1181 (Ala. 2019) ("Notably, county and city boards of education have been described as 'agencies of the state.' Enterprise City Bd. of Educ. v. Miller, 348 So. 2d 782, 783 (Ala. 1977)."); Ex parte Phenix City Bd. of Educ., 67 So. 3d 56, 60 (Ala. 2011) ("City boards of education are local agencies of the State ...."); Hutt v. Etowah Cnty. Bd. of Educ., 454 So. 2d 973, 974 & n.2 (Ala. 1984) (stating that "municipal boards of education are not agencies of municipalities, but agencies of the state, 'empowered to administer public education within the cities[,]' Enterprise City Board of Education v. Miller, 348 So. 2d at 783, 784," and making the same observation about county boards of education -- "[t]hey execute a state function -- not a county function -- namely, education"); Day v. Andrews, 279 Ala. 563, 565, 188 So. 2d 523, 525-26 (1966) ("A reading of the entire provisions concerning the appointing and functioning of city boards of education shows beyond per adventure that the legislative purpose was to invest in boards of education, when duly and legally selected, the authority to act as free and independent agencies of the city in the operation of the city school systems, free of interference by the governing bodies which may have appointed the members.");

Alves, 922 So. 2d at 133 n.3 ("City boards of education are authorized pursuant to § 16-11-1 et seq., Ala. Code 1975. They are agencies of the state empowered to administer public education within the cities; they are not subdivisions or agencies of local municipal governments."). Thus, as a city board of education, the PBE acts, first and foremost, on behalf of the State to carry out the State's power to provide public education of students; it is not acting at the behest of Pelham.

A city board of education's independence from the municipality with which it is associated is illustrated in Alves. Alves involved a situation in which the Board of Education for the City of Guntersville ("the Guntersville Board of Education") owned land within the corporate limits of the City of Guntersville ("Guntersville") on which it wished to construct a new middle school. The property was zoned by Guntersville as "'R-2 (single-family residential district),'" but the Board of Adjustment for the City of Guntersville ("the Guntersville Zoning Board") was permitted to provide a "'special exemption use' … for certain public and semi-public uses, including public schools." 922 So. 2d at 130. The Guntersville Zoning Board granted the special exemption, but several residents in the area objected to that decision, and they appealed the exemption decision

29

to the Marshall Circuit Court. The Guntersville Board of Education was permitted to intervene in the appeal, and it contended that it was "engaging in a governmental function in choosing the location for the public school and that, therefore, the [Guntersville] Zoning Board did not possess the authority to enforce the city's zoning ordinance to prevent the [Guntersville] Board of Education from constructing the school at the proposed site." Id. at 131. The residents responded by arguing, among other things, that "the city had the authority to enact zoning ordinances regarding the location for public schools pursuant to its general zoning powers under § 11-52-70, Ala. Code 1975 (which grants municipalities the authority to enact zoning ordinances within their corporate limits)." Id. at 131-32. The trial court concluded that the Guntersville Board of Education was engaging in a governmental function and that, therefore, the Guntersville Zoning Board lacked authority to enforce the zoning ordinance against the Guntersville Board of Education. On appeal, the Court of Civil Appeals, relying upon Lauderdale County Board of Education v. Alexander, 269 Ala. 79, 110 So. 2d 911 (1959), agreed with the trial court, concluding that

"the [Guntersville] Board of Education's choice of the location for the public school is a governmental function. Accordingly,

30

> we must conclude that the [Guntersville] Zoning Board does not possess the authority to enforce the city's zoning ordinance against the [Guntersville] Board of Education regarding the [Guntersville] Board of Education's choice of location for the public school."

Id. at 133-34. As the PBE and the board members note in their brief, "the Court in Alves applied the general rule [that governmental functions are exempt from local zoning ordinances] to authorize a city board of education to construct a proposed school in a location that violated the zoning ordinance enacted by the very body that created the school board." PBE & board members' brief, p. 27. The Court of Civil Appeals could reach that conclusion because the Guntersville Board of Education is a local State agency for exercising the power of educating students, a State power independent of Guntersville.

The case upon which the Alves Court relied in reaching its conclusion, Lauderdale County Board of Education, demonstrates the same point. In that case, the Lauderdale County Board of Education ("the Lauderdale County Board") owned certain real property within the corporate limits of the City of Florence ("Florence"), and it desired to build on that property "a 'County Barn,' wherein [the Lauderdale County Board sought] to store school buses, coal supplies, school supplies, and

establish a repair and maintenance shop for the Lauderdale County, Alabama, school system." 269 Ala. at 83, 110 So. 2d at 914. Some residents within the corporate limits of Florence whose homes were "immediately behind or adjoining" the property on which the Lauderdale County Board sought to build the "County Barn" filed a complaint seeking an injunction to stop the construction, arguing that the project violated Florence's zoning ordinance because the property was zoned for residential use. Id. This Court sided with the Lauderdale County Board:

> "The final question is whether a county board of education actively engaged in the pursuance of the construction of a 'County Barn' is subject to a zoning ordinance of a municipal corporation. [The Lauderdale County Board] contend[s] that the zoning ordinances of a municipal corporation cannot be enforced to prohibit [it] from constructing and operating the facility in question in the zoned residential district. We agree with this contention. The zoning ordinance in the instant case may, or may not, be evidence of the nature of the locality involved.

> "We have held that when a city is engaged in a proprietary business, it is subject to its own zoning regulations; but that when engaged in a governmental function, it is not subject to its own zoning regulations. Jefferson County v. City of Birmingham, 256 Ala. 436, 55 So. 2d 196 [(1951)]; Alabama Alcoholic Beverage Control Board v. City of Birmingham, 253 Ala. 402, 44 So. 2d 593 [(1950)]. See 62 C.J.S. Municipal Corporations § 226(16)(c); 58 Am. Jur., Zoning, § 120. We have said that the county board of education is acting in a quasi-legislative capacity when it locates consolidated schools and provides for the

32

transportation of pupils as a part of the system. <u>Shores v. Elmore County Board of Education</u>, 241 Ala. 464, 3 So. 2d 14 [(1941)]. <u>If a city engaged in a governmental function is not subject to its own zoning regulations, certainly a county engaged in a governmental function is not subject to a city's zoning regulations. The construction and operation of a 'County Barn' as heretofore described is a governmental function of a county board of education</u>."

269 Ala. at 86-87, 110 So. 2d at 917-18 (emphasis added).

As the PBE and the board members observe in their brief, the Court concluded that the governmental-function exemption applied to the Lauderdale County Board's construction of the school facility even though the property in question was located within the corporate limits of Florence, which was outside the Lauderdale County Board's school district because students in the corporate limits of Florence were served by the Florence City Schools Board of Education. Likewise, the Lauderdale County Board played no role in devising or modifying Florence's zoning ordinance, yet the Court concluded that the governmental-function exemption applied to the Lauderdale County Board's construction of a school facility within the corporate limits of Florence. That conclusion was appropriate because the Lauderdale County Board was exercising <u>a State power</u> for the benefit of educating students served by the Lauderdale County Board.

33

Helena attempts to distinguish <u>Alves</u> and <u>Lauderdale County Board of Education</u> on the basis that the boards of education in each of those cases were located in the same geographic jurisdictions as the municipalities with the relevant zoning ordinances.

> "Unlike the application of the exemption in <u>Alves</u> and <u>Lauderdale</u> to either the boards of education's own municipality or a municipality of <u>concurrent jurisdiction</u>, no Alabama court has demonstrated an extension of this exemption to a body operating in a <u>competing jurisdiction</u>:
>
> "….
>
> "'[A] ... question arises when two governing units of the same class, occupying the same sphere of government, undertake to exercise jurisdiction at the same time over the same territory and inhabitants thereof. This court has settled the question, in accordance with obvious reason, that <u>two municipalities cannot exist over the same territory at the same time</u>.'
>
> "<u>City of Homewood v. Wofford Oil Co.</u>, 169 So. 288, 289 (Ala. 1936) (emphasis added) (cleaned up)."

Helena's reply brief, pp. 18-19. Helena asserts that this understanding of the governmental-function exemption "is common legal and democratic sense" because it "is predicated on the reality that a government operating within its own jurisdiction has the power to set its own zoning rules, and thus to exempt itself from its own zoning rules." Helena's brief,

p. 38. Helena repeats that theory in its reply brief, stating that the governmental-function

> "exemption is directly implied by a city's sovereignty within its own territorial boundaries -- a city has the power to set or amend its own zoning rules in the interest of its citizens, and its decision not to comply with one of them is presumed to be an exercise of that same sovereignty on behalf of the same public interest protected by the zoning rules."

Helena's reply brief, p. 14.

However, as our discussion of Alves and Lauderdale County Board of Education shows, Helena misunderstands the situations in those cases. In Alves, the Guntersville Board of Education was not the same government entity as Guntersville. In Lauderdale County Board of Education, the Lauderdale County Board did not serve the same school district as Florence. The application of the governmental-function exemption in those cases did not constitute situations in which the municipalities were granting themselves exemptions from their own zoning rules. Instead, both the Guntersville Board of Education and the Lauderdale County Board were local State agencies empowered to administer public education on behalf of the State, not subdivisions or agencies of Guntersville or Florence, respectively. Likewise, the PBE's constructing and operating an athletic field and parking lot within

Helena's corporate limits does not constitute <u>a second municipality's</u> operating in the first municipality's territory. It constitutes <u>the State</u> operating in Helena's territory for the benefit of <u>Alabama</u> students educated by the PBE that live within the corporate limits of Pelham.[10]

Helena appears to briefly argue that the fact that the PBE is a local State agency is immaterial because "Helena is also a creature and agency of the State." Helena's brief, p. 24. See, e.g., <u>State v. City of Birmingham</u>, 299 So. 3d 220, 228 (Ala. 2019) (stating that it is a "well settled principle that '[m]unicipalities are but subordinate departments of state government.' <u>Alexander v. State ex rel. Carver</u>, 274 Ala. 441, 443, 150 So.

---

[10]We note that, despite the number of times Helena repeats its contention that "[f]or the governmental function exemption to have any application, the government seeking the exemption must first be operating within the bounds of its own jurisdiction," Helena cites no relevant Alabama authority to support that proposition. Helena's brief, p. 37; see also Helena's reply brief, p. 17. Helena cites <u>City of Selma v. Dallas County</u>, 964 So. 2d 12, 19 (Ala. 2007), for its proposition, see <u>id.</u>, but <u>City of Selma</u> does not say that, and Helena notably does not quote any language from the case that even implies it. Instead of relying on Alabama authorities, Helena repeatedly quotes from a Florida case in support of its position. See <u>Orange Cnty. v. City of Apopka</u>, 299 So. 2d 652, 654-55 (Fla. Dist. Ct. App. 1974). But <u>Orange County</u> did not apply the governmental-function/proprietary-function test; it applied a "balancing-of-public-interests" test. Helena has not asked us to overrule our cases applying the governmental-function test, so <u>Orange County</u> is inapposite.

2d 204, 206 (1963)."); <u>City of Bessemer v. Personnel Bd. for Jefferson Cnty.</u>, 240 Ala. 411, 413, 199 So. 815, 816 (1941) ("A city is a political subdivision of the state created as a convenient agency for the exercise of such governmental powers of the state as may be intrusted to it."). However, as we already have discussed, boards of education "execute a state function -- not a county [or municipal] function -- namely, education." <u>Hutt</u>, 454 So. 2d at 974. In contrast, zoning is a delegated municipal function limited to municipal boundaries. See, e.g., <u>Gibbons v. Town of Vincent</u>, 124 So. 3d 723, 731 (Ala. 2012) ("Section 11-52-70, Ala. Code 1975, allows a municipality to adopt 'such ordinances as necessary to carry into effect and make effective the provisions of this article,' thereby vesting the municipality with the legislative authority to zone land within its corporate boundaries."). Being a political subdivision of the State -- as is Helena-- is different in character than being "an independent agency of the state," as is the PBE. <u>Turk v. Board of Educ. of Monroe Cnty.</u>, 222 Ala. 177, 177, 131 So. 436, 437 (1930). "[A] town or city is a voluntary association created and built upon the voluntary assent of the community and its citizens, and enjoys the privileges and rights given in its charter of creation and the laws governing the same."

Montgomery v. City of Athens, 229 Ala. 149, 152, 155 So. 551, 553 (1934). Accordingly, the reach of a city's zoning powers is different than a board of education's exercise of power involving education, which is done by the will of the State. See Laidlaw Transit, 769 So. 2d at 877 ("These statutes confer broad power on a city board of education to take those steps it deems necessary to properly educate the children under its charge. The granting of such broad power to a city school board is consistent with, and indicative of, the Legislature's comprehensive approach to education in Alabama -- an approach that focuses on the achievement of academic excellence."); Clark v. Jefferson Cnty. Bd. of Educ., 410 So. 2d 23, 27 (Ala. 1982) ("The legislature has made broad grants of authority to the Alabama State Board of Education, the Alabama State Department of Education and to the individual county boards of education to administer and supervise the public schools.").[11]

_____

[11]The difference between the PBE as an agency of the State and Helena as a local political subdivision is reflected in the fact that school boards have Article I, § 14, immunity, but municipalities do not. See, e.g., Ex parte Phenix City Bd. of Educ., 67 So. 3d 56, 60 (Ala. 2011) ("City boards of education are local agencies of the State; therefore, they enjoy constitutional immunity from tort actions alleging negligent entrustment and asserting claims of loss of services."); Ex parte City of Tuskegee, 932 So. 2d 895, 901 n.3 (Ala. 2005) ("Absolute immunity does not extend to municipalities or its agents."); Health Care Auth. for Baptist Health v.

In short, the governmental-function exemption from municipal zoning ordinances is not based on geographic location; rather, it is based upon the power that is being exercised. As the PBE and the board members explain: "[T]he exemption from local zoning codes that applies to governmental agencies like the [PBE] stems from the nature of the proposed land use as a governmental function." PBE & board members' brief, p. 29. The power exercised in this case, public education, is unquestionably a governmental function, rather than a proprietary function -- a fact that Helena has never challenged -- and it is a power that belongs to the State, rather than to a municipality. Therefore, the PBE's power to construct and operate the athletic field is not constrained by the fact that the property is within the corporate limits of Helena, and the athletic-field project is exempt from Helena's zoning ordinance.[12]

---

Davis, 158 So. 3d 397, 408-09 (Ala. 2013) ("[N]either counties nor municipalities nor private entities are part of the State or enjoy State immunity."). See generally Ex parte Tuscaloosa Cnty., 796 So. 2d 1100, 1103 (Ala. 2000) ("Under Ala. Const. of 1901, § 14, the State of Alabama has absolute immunity from lawsuits. This absolute immunity extends to arms or agencies of the state, … but generally does not extend … to municipalities or municipal agencies ….").

[12]Our conclusion that Helena was not entitled to an injunction as a matter of law pretermits any need to evaluate the parties' arguments

Aside from Helena's two primary arguments that we have addressed in this opinion, Helena also advances public-policy arguments that, it says, warrant limiting a city board of education's powers to a city's geographic territory. Specifically, Helena argues that a ruling in the PBE's favor will cause "conflict and chaos among adjacent municipalities and their boards of education across the state," and it posits that, if we affirm the circuit court's order, hypothetically "the Hoover Board of Education could conduct operations in Vestavia, the Montgomery Board of Education could conduct operations in Prattville, the Ozark Board of Education could conduct operations in Dothan, and the Prichard Board of Education could conduct operations in Mobile." Helena's reply brief, pp. 10-11. Such potential public-policy consequences undoubtedly explain why the circuit court in its July 5, 2023, order expressed the view that

> "the law limiting a municipality['s] right to govern and control the use of land in its own borders should be revisited by the Alabama Legislature …. The law, as written, inevitably undermines the spirit of cooperation between government entities in pursuit of the common function of educating children."

concerning whether the prerequisites for an injunction support Helena or the PBE and the board members.

40

As the circuit court correctly noted, however, "the function of the Court is to apply the law." If our straightforward application of the law produces undesirable policy consequences, it is the responsibility of the Legislature, rather than this Court, to alter the law. See, e.g., Boles v. Parris, 952 So. 2d 364, 367 (Ala. 2006) ("[I]t is well established that the legislature, and not this Court, has the exclusive domain to formulate public policy in Alabama.").

## IV. Conclusion

Section 16-11-9 does not inhibit the PBE's authority to construct and operate an educational facility on the property because that statute does not restrict a city board of education's powers of administration and management of its public schools to the geographic boundaries of the city it serves or to the territory annexed by that city. Moreover, Helena's zoning ordinance cannot be enforced against the athletic-field project because the PBE's construction and operation of the athletic field constitutes a State governmental function -- public education -- that is exempt from the application of municipal zoning ordinances. Accordingly, the circuit court did not err in declaring that the PBE had the authority to acquire, develop, and use the property for the athletic-field project and

41

in ordering Helena not to enforce its zoning ordinance to prevent the development or use of the athletic field. Therefore, we affirm the circuit court's July 5, 2023, order.

AFFIRMED.

Parker, C.J., and Mendheim, Stewart, and Mitchell, JJ., concur.

Shaw, J., concurs specially, with opinion.

Sellers, J., dissents, with opinion, which Wise and Bryan, JJ., join.

Cook, J., recuses himself.

SHAW, Justice (concurring specially).

I concur fully with the main opinion. I write specially to note the following.

A city board of education is a separate entity from a city; while it is responsible for the administration of the public schools within the boundaries of a city, it is an agency of the State and is not a part of that city's government. See Ex parte Bessemer City Bd. of Educ., 143 So. 3d 726, 728 (Ala. 2013). Thus, as the main opinion stresses, we cannot conflate the Pelham Board of Education with the City of Pelham, or a city board of education's powers with the powers of a city or the ability of a city to operate outside its geographical limits.

Section 16-11-9, Ala. Code 1975, provides:

"The city board of education is hereby vested with all the powers necessary or proper for the administration and management of the free public schools within such city and adjacent territory to the city which has been annexed as a part of the school district which includes a city having a city board of education."

Under this Code section, a city board of education is granted "powers." Those "powers" include any that are "necessary or proper for … administration and management." The objects to be administered and

managed are the "free public schools." The "free public schools" for which the powers are exercised are those "within such city," that is, the schools of a city board of education.[13] Stated simply, the Code section says that a city board of education has all powers needed to appropriately administer and manage the city board of education's schools.

The "public schools within such city" are the things to which the powers are to be directed, not a limitation regarding where the powers may be exercised. While, in many cases, the powers would be exercised at the location of the schools, those powers are not so constrained. Numerous activities related to the "administration and management of the free public schools within [a] city" occur outside the premises of "public schools," and they can certainly occur outside the city's boundaries. Those activities, like seasonal sports tournaments, art performances, academic exercises, and graduation ceremonies, might be temporary or might not require permanent, fixed locations. But if those

---

[13]The phrase "and adjacent territory to the city which has been annexed as a part of the school district which includes a city having a city board of education" appears to refer to the situation in which a city that has a city board of education has "annexed" property that was part of a county school system, thereby expanding the city's boundaries. See § 16-8-20, Ala. Code 1975.

powers can be exercised outside of the city's boundaries temporarily and at different places, then those powers can be exercised in more permanent ways at fixed locations. This case is about where acts concerning the administration and management of public schools can occur. While the locations of those public schools are fixed -- "within such city" -- the Code section does not suggest that powers exercised in relation to the administration and management of those schools within the city's boundaries are similarly fixed.

SELLERS, Justice (dissenting).

The Pelham Board of Education ("the PBE") does not have the power under § 16-11-9, Ala. Code 1975, to construct and use the athletic field and parking lot ("the athletic-field project") on the real property in dispute here without the property first being annexed by the City of Pelham ("Pelham") as part of the Pelham school district. As the main opinion points out, the PBE is a city board of education that serves students in the corporate limits of Pelham under the authority of § 16-11-1 et seq., Ala. Code 1975. The PBE purchased the subject property, which is located within the corporate limits of the City of Helena ("Helena"), for the purpose of developing and operating the athletic-field project, which will serve the students at Pelham High School. See § 16-11-12, Ala. Code 1975 (granting a city board of education the power to purchase real estate for the use of public schools). The property, however, has not been annexed by Pelham as part of the Pelham school district. Section 16-11-9, the general statute at issue, provides that a city board of education, such as the PBE, is "vested with all the powers necessary or proper for the administration and management of the free public schools <u>within such city and adjacent territory to the city which has been</u>

46

annexed as a part of the school district ...." (Emphasis added.) Implicit in § 16-11-9 is the understanding that the PBE's power to administer and manage Pelham High School extends to the development and operation of additional structures related to school uses, such as the athletic-field project. Because the PBE will be tasked with the administration and management of the athletic-field project, the property on which the project is located must be annexed by Pelham as part of the Pelham school district. Thus, § 16-11-9 specifically limits a city board of education's powers of administration and management of its public schools to the geographic boundaries of the city it serves or to adjacent territory that has been annexed by the city as part of its school district. That is the only way to read the statute, because to construe it otherwise would allow the precise controversy that has evolved between Helena and the PBE, by giving absolute authority to a city board of education without any regard or deference to an adjacent city. Annexation, on the other hand, affords an orderly process, respecting the territorial rights of both the citizens served by the school board and the citizens of the adjacent city. School boards, like numerous other governmental entities, are defined by geographic boundaries. For example, § 16-11-2(b), Ala. Code

47

1975, requires that members of a city board of education be residents of the city the board serves. And, although there is no specific statute requiring parents to send their children to a particular public school, it is generally understood that children are required to attend schools in the school district in which they live. See § 16-11-16(a), Ala Code 1975 ("The city board of education shall have the power to establish and maintain a system of public schools … for the benefit of children who are bona fide residents of and living within the corporate limits of such city."), and Alabama State Dep't of Education, Alabama Attendance Manual 2023-2024 at 10 ("the Manual") ("The county or city superintendent shall recommend a plan for identifying local attendance districts and shall submit this plan for approval and adoption by the county or city board of education. Students shall be assigned to the schools within the attendance district according to local board policies, court order or applicable state laws, and/or State Board of Education mandates.").[14] It is incongruent, on the one hand, to require children to attend public

---

[14]It appears that the Manual is public record of which this Court may take judicial knowledge. See Swindle v. Remington, 291 So. 3d 439, 450 n.5 (Ala. 2019) ("[T]his Court may take judicial notice of a matter of public record.").

schools based on the geographic location of their residence while, on the other hand, allowing a city board of education to acquire and develop for school use property in an adjacent city without regard to the board's geographic boundaries or the land-use regulations of the adjacent city. Because I believe that § 16-11-9 generally defines the geographic limits within which a city board of education can exercise its powers, I respectfully dissent. I would reverse the judgment of the trial court and hold that § 16-11-9 prohibits the development and use of the athletic-field project on real property within the corporate limits of Helena that has not been annexed by Pelham as part of the Pelham school district. I am concerned that the main opinion gives a city board of education the ability to purchase and use property anywhere in Alabama, with the sole limitation being that it serve only those students living within the geographic boundaries of the city of its formation. Reading the statutes governing city boards of education together leads only to one conclusion: a city board of education is limited to using property within the geographic boundaries of the city of its formation in order to serve the students living within those boundaries. If a city board of education needs to expand and use property not located within those geographic

boundaries, § 16-11-9 requires that such additional property must be annexed into the city before the city board of education may use it.

Wise and Bryan, JJ., concur.